

**2657 Mount Carmel Avenue**
**Glenside, PA 19038**

a@perronglaw.com  Tel. (215) 225-5529 (CALL-LAW)
www.perronglaw.com  Fax (888) 329-0305

December 16, 2024

*Via ECF*
Chambers of Hon. James M. Wicks
100 Federal Plaza, Courtroom 1020
Central Islip, New York 11722

Re:  Response to Pre-Motion Letter,
*VanderSloot v. Charles Baratta LLC*, No. 24-cv-7096

Dear Judge Wicks:

I represent Plaintiff Matthew VanderSloot in the above-captioned matter. We write to address the Defendant's pre-motion letter filed with the Court on November 25, 2024 (ECF No. 11). In sum, the Defendant relies upon a generalized denial that it placed any of the calls at issue in the complaint. But the Plaintiff has pled facts which give rise to the inference of direct liability and that indicate that discovery is warranted and required into the scope and nature of the calling conduct alleged, demonstrating that this case must proceed to discovery to uncover the ownership of the numbers that called the Plaintiff, including any such numbers directly owned by the Defendant or affiliates it may have hired, if any, to place calls on its behalf.

The Defendant claims that the Plaintiff has failed to allege direct liability and also failed to allege vicarious liability for the calls at issue. That is not true. As the complaint makes clear, and owing to the over 100 calls placed by the Defendant to the Plaintiff, the Defendant has spun a tangled and complicated web of calls from individuals using various fictitious names and aliases designed to conceal their identities, before transferring the calls to individuals who admit that they are employees of the Defendant. In sum, the presence of such a complicated web of individuals using fake names and telephone numbers is common in the telemarketing arena, and often a company will use such fictitious names and aliases as "gatekeepers" to prevent ready identification of their TCPA-violative activities.

The Defendants' argument ignores the smoking gun evidence of the Defendants' direct liability for the calls at issue and instead adopts a "we didn't do it" defence, which is inappropriate to adjudicate here at the pleadings stage. Faced with a nearly identical fact pattern with the same type of calls at issue here, those

soliciting legal services for Camp Lejeune claims, at least two courts have had no trouble rejecting the very argument advanced here and holding that evidence of emailed agreements received as a result of telemarketing calls was sufficient to give rise to the inference of liability on all the entities named in the agreement:

> Defendants contend that Cunningham did not plausibly plead a basis to hold [them] liable for any allegedly improper calls. But, as Defendants concede, "a company can be held liable for calls made on its behalf, even if not placed by the company directly." The complaint alleges that Sokolove partnered with Wallace & Graham to solicit Camp Lejeune claimants through telemarketing efforts and that Wallace & Graham and Rhine Law Firm were both signatories of the proposed retainer agreement sent to Cunningham after the calls. These allegations, which must be accepted as true, provide a sufficient basis for "draw[ing] the reasonable inference that the defendant[s] [are] liable for the misconduct alleged."

*Cunningham v. Wallace & Graham*, No. 1:24-CV-00221, 2024 WL 4826798, at *3 (M.D.N.C. Nov. 19, 2024); *Cunningham v. Watts Guerra, LLP*, No. SA-22-CV-363-OLG (HJB), 2024 WL 3100773, at *13 (W.D. Tex. May 23, 2024).

Here, the Plaintiff has alleged that he received the same: an email from the Defendant's very own email domain and employee was sent to him regarding an application for a Camp Lejeune claim. Moreover, these were followed up with unlawful calls and text messages which were plainly directly placed by the Defendant. "[A] plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency." *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016) (citing *Dish Network*). A plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451, at *2 (N.D. Ill. Sep. 7, 2016). A review of the pleadings here reveals that the Plaintiff has unquestionably done so, pleading direct liability for all the calls at issue, or at least facts which give rise to the inference of direct liability.

For TCPA claims specifically, there is a low bar to pleading liability, as a plaintiff is *not expected* to allege "facts suggesting that" the defendant: (1) "instructed" the putative agent "to make the call to" the plaintiff, (2) "had any authority over the time, means and manner of" the putative agent's solicitations, or (3) "had the ability to issue instructions … on these subjects." *Watts Guerra*, 2024 WL 3100773, at *13 ("Given Plaintiff's allegations that he was solicited by robocallers to file a Camp Lejeune claim… and in light of the documents Plaintiff received… Plaintiff's complaint and supporting information allows the Court to draw a reasonable inference of liability here. Defendants' argument that more specificity was required at this stage is untenable."); *Dolemba*, 213 F. Supp. 3d at 997.

As so many courts have held, Defendant seeks to impose an "untenable" standard of specificity upon the Plaintiff at the pleadings stage and take advantage of its own obfuscative misconduct by claiming an inability to connect the calls to the Defendant, either directly or vicariously, at the pleadings stage, which the applicable case law nevertheless unquestionably confirms that the Plaintiff has done. As explained in the Complaint, the entire course of calling conduct, which numbers close to one hundred calls as alleged in the complaint, is too broad to plead in exacting detail at the pleadings stage. Defendants seem to require the Plaintiff to plead more than the "short and plain statement" demonstrating an entitlement to relief. FED. R. CIV. P. 8(b)(1)(A).

Even owing to the lack of pleading the same and simply describing the calls in the aggregate, it is the Plaintiff's position that any deficiencies are easily curable through amendment. There exist additional unpled facts which further demonstrate direct liability for the conduct alleged. For example, the calls that the Plaintiff received also include calls and text messages from Christopher Garcia, a person who is admittedly an employee of the Defendant, and which such calls were directly placed by the Defendant, thus plainly demonstrating direct liability for TCPA violations. Moreover, some of the text messages and calls from the same number used by Mr. Garcia and which directly sent communications from the Defendant and its admitted telephone number also used fictitious aliases, including "Christopher Gee" at "Legal Helpers." Plaintiff believes that "Christopher Gee" is an alias for Mr. Garcia used at the outset of such illegal communications by Defendant in order to conceal the Defendant's identity, and not because "Legal Helpers" is a separate entity entirely.

Plaintiff remains hopeful that this letter, and subsequent conference, will cause the Defendant to reconsider its positions. Should they not, the Plaintiff will respond to any motion in due course. I remain at your chambers' dispensation in the event that further correspondence or clarification is required.

                                                  Respectfully Yours,

                                                  Andrew R. Perrong, Esq.