IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MATTHEW VANDERSLOOT,** individually and on behalf of all others similarly situated, | Case No. 24-7096 |
| *Plaintiff*, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| **CHARLES BARATTA LLC D/B/A PRIME MARKETING SOURCE** | |
| *Defendant*. | |

**FIRST AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiff Matthew VanderSloot ("Plaintiff" or "Mr. VanderSloot") brings this Class Action Complaint and Demand for Jury Trial against Defendant Charles Baratta LLC d/b/a Prime Marketing Source ("Defendant" or "Prime") and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal

government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3.  The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Prime violated the TCPA by sending telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent.

**PARTIES**

4.  Plaintiff Matthew VanderSloot is an individual.

5.  Defendant Charles Baratta LLC d/b/a Prime Marketing Source, is a corporation incorporated in New York and having its principal place of business in this District.

**JURISDICTION AND VENUE**

6.  This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

7. This Court has general personal jurisdiction over Prime because the company has its headquarters and principal place of business in this District.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the only Defendant is a resident of this State and District.

## BACKGROUND

9. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

10. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

11. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

12. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

13. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

14. At no point did the Plaintiff consent to receiving telemarketing calls or text messages from the Defendant prior to receiving the messages at issue.

15. Plaintiff's telephone number, (208) XXX-XXXX, is a residential, non-commercial telephone number.

16. Mr. VanderSloot uses the number for personal, residential, and household reasons.

17. Plaintiff's telephone number has been listed on the National Do Not Call Registry since he listed it there more than 31 days prior to the calls at issue.

18. Plaintiff has never been a customer of Prime.

19. Prime's business is that of a lead generator. That is, it obtains information about purportedly interested clients looking to file lawsuit and then sells those clients' information, together with other intake data it collects, and a signed retainer agreement, to law firms.

20. In essence, Defendant Prime is a modern-day case runner that law firms pre-pay for client contracts.

21. To generate the leads that it then sells to law firms, Prime relies on illegal telemarketing, including using fictitious names to hide their identity.

22. Starting on August 30, 2023, the Plaintiff received over approximately one hundred calls from various potentially fictitiously named individuals, including "Tiffany," "DeAndre," and "Christopher," and various fictitiously named and non-existent companies and entities, including "Legal Helpers" and the "Medical Health Department," calling to solicit the Plaintiff for legal representation in a Camp Lejeune claim.

23. For the avoidance of any doubt, all these calls were placed directly by Defendant Prime Marketing Source, as the indicia of the calls outlines and demonstrates below.

24. The first such call from Defendant Prime Marketing, on August 30, 2023, came from an individual named "DeAndre" who claimed to be from the fictitiously-named "Legal Helpers" and from the "spoofed" Caller ID 208-681-7762. During this call, the Plaintiff provided unique information, including an email address and name, regarding filing a Camp Lejeune claim to identify the caller identifying himself as "DeAndre" from "Legal Helpers" who was illegally calling him using a spoofed caller ID and for no other reason.

25. As will be explained below, Plaintiff has positive proof that "Legal Helpers" is merely a fictitious name used by the Defendant when directly dialing its calls to evade detection and TCPA liability. In other words, "Legal Helpers" *is* Defendant Prime Marketing Source.

26. Thereafter, starting on September 4, 2023 and continuing through January 10, 2024, the Plaintiff received at least 69 calls from "Tiffany" at the "Medical Health Department" and "DeAndre" from "Legal Helpers." "Tiffany" had the information that the Plaintiff had provided "DeAndre" on the August 30 Call. The purpose of these calls was to follow up on a Camp Lejeune Claim that the Plaintiff had started with DeAndre and to obtain more information so that she could connect the Plaintiff to a law firm who would handle the case. These calls all came from various "spoofed" caller IDs, including 208-900-6666, 615-653-4187, 210-405-8263, 872-760-0218, 872-760-0759, and 713-357-5174.

27. Particularly notably for solidifying the connection between "Tiffany" and "DeAndre," around September 18, 2023, the Plaintiff received calls and text messages from both "DeAndre" and "Tiffany" regarding the emailing of a retainer agreement and both attempted to ascertain why the Plaintiff had not received a retainer agreement which was to be sent to his email, including from the telephone number 615-219-6257.

28. Then, on September 20 and 27, 2023, the Defendant sent a text message from a number that it would later send as identifying itself directly. On those days, the Defendant sent the Plaintiff a text from a 210-405-8263 telephone number identifying himself as "DeAndre" with Legal Helpers. Text messages from this telephone number would prove invaluable in subsequent investigation, as outlined below.

29. Upon information and belief, the 210-405-8263 telephone number is a direct telephone number owned and operated by the Defendant in the Defendant's name.

30. Thereafter, on September 28, 2024, the Plaintiff requested to be placed on the Defendant's Do Not Call List by text to the number 615-219-6257. But "Tiffany" continued to contact the Plaintiff, including on November 16, 2023, stating in a test message from 615-219-6257, "This is Tiffany, I'm sorry for not responding for so long. I've been sick for a long time

5

and I just got back to work right now. May I know.. What would be the best time for me to call you? so that I can help you with your claim. Again I am very sorry." "Tiffany" followed this up with a phone call a few minutes later from the Caller ID 713-357-5174.

31. Eventually, and after a short lull in December, on January 10, 2024, the Plaintiff received at least seven calls from "Tiffany" from the fictitiously named "Medical Health Department" from the caller ID 713-405-3514, calling to solicit the Plaintiff for legal representation with regards to a Camp Lejeune claim.

32. During the last of the calls, the Plaintiff stated that he did not know why "Tiffany" was calling or why she continued to call despite the previous do not call requests. In response, "Tiffany" inquired if the Plaintiff had received calls from her "law associate" calling from the telephone number 954-800-2991 and told the Plaintiff to "just search for that number."

33. To uncover why the Plaintiff was continuing to receive calls regarding Camp Lejeune claims, the Plaintiff called the 954-800-2991 number back from a different telephone number. During that call, the person on the other line that answered stated that his name was Chrisopher Garcia and provided his email as cgarcia@primemarketingsource.com. He provided a callback number of 954-799-8058. Mr. Garcia also sent the Plaintiff an email regarding an application for a Camp Lejeune claim which also originated from the Defendant's email.

34. Upon information and belief, the 954-800-2991 and 954-799-8058 telephone numbers are direct telephone numbers owned and operated by the Defendant in the Defendant's name.

35. "Christopher Garcia's" a/k/a "Christopher Gee's" involvement in these calls is critical and proves that "Tiffany," "DeAndre," and "Christopher," all work at the same place and that the calls all originated from the same source, the Defendant.

36. Critically, on January 10, 2024, immediately after the voice call with "Christopher" had concluded, the Plaintiff received a text message from the 210-405-8263 number. That text message read, "954-799-8058 Chris G calls only"

6

37. But that's not all. Immediately after, the Plaintiff received another text from that 210-405-8263 number, saying "cgarcia@primemarketingsource.com."

38. Thereafter, "Christopher" sent the Plaintiff a text message from the 210-405-8263 number with a link to a website, https://app.lawmatics.com/forms/share/4a8458c2-b30b-462f-b8ab-8cfc3184a7e5 , to upload the Plaintiff's ID. Visiting that website, to this day, reveals that it is prompting for an individual named "Matthew," the Plaintiff, to upload his ID.

39. In addition, the Plaintiff received a voice call from the 210-405-8263 number on January 17, 2024 where "Chris" was calling to follow up on the ID upload and to speak with the Plaintiff about a Camp Lejeune claim. This was followed up a text message from Tiffany from the 615-219-6257 number asking the Plaintiff to fill out the same ID verification and registration link that was sent from "Chris."

40. Thereafter, the following day, the Plaintiff received a text message from the same 210-405-8263 number stating "Hi this is Christopher Gee from Legal Helpers. If you or someone from your family have ever lived at Camp Lejeune and was diagnosed with cancer, please reply to this message or call me back at 954-799-8058 and we will check if you qualify for any compensation. If you have not lived there or not interested, simply reply back "NO". Thank you!"

41. Notably, this callback telephone number in the body of the text message, 954-799-8058, is the same number that Christopher Garcia stated was his number in the January 10 text message and on the phone.

42. This was then followed by another text message from 210-405-8263 one minute later stating, "Tried to reach you It's Chris With the Camp Lejeune lawsuit . Please let me know when is a better time for you to go over that information we spoke about . Talk soon, have a great day !"

43. The 210-405-8263 number is *critical*, and its importance cannot be understated, as this is the *same telephone number* that "DeAndre" with "Legal Helpers" texted the Plaintiff from on September 20 and 27, as described *supra*.

7

44. And, as indicated above, "Christopher" identified himself via text message from that very number as from Defendant Prime Marketing Source, including by providing a Prime Marketing Source email and sending the Plaintiff an email from there just days prior, but then texted the Plaintiff and stated that he was from the fictitious "Legal Helpers." Accordingly, this contact, in writing, from the same telephone number less than a week apart, establishes that "Legal Helpers" is merely a fake name *used by* Prime Marketing Source, and "Christopher Garcia" appears to also use the fake name "Christopher Gee."

45. "Legal Helpers," and relatedly "Medical Health Department," are not separate companies or entities. Rather, they are fake names used by the Defendant to conceal its identity.

46. And, as explained above, the constant communication between "DeAndre" and "Tiffany," or "Tiffany" and "Christopher," is not accidental, for such individuals called or texted the Plaintiff asking about the exact same things hours or minutes apart. It then follows that they are all employed and work at the same place, Defendant Prime Marketing Source.

47. And, as described above, the Plaintiff obtained the 954-800-2991 number to reach "Chris" by voice from "Tiffany," who provided the Plaintiff that number, which "Chris" then used the 210-405-8263 number to send the above-described text messages from immediately after the voice call concluded, which such number was also used by "DeAndre."

48. In this way, all of the "Tiffany" from "Medical Health Department" and "Chris" and "DeAndre" calls from "Legal Helpers" were in fact uncovered as originating from the Defendant Charles Baratta d/b/a Prime Marketing Source.

49. The calls were unwanted.

50. The calls were nonconsensual encounters.

51. Plaintiff's privacy has been repeatedly violated by the above-described telemarketing text calls.

52. Plaintiff never provided his consent or requested the calls.

53. Plaintiff and the Class have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied

8

their telephone message space, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

54. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

55. Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing text message or call from or on behalf of Defendant encouraging a sign up for Camp Lejeune Claims, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

56. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of their agents.

57. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant's telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

58. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Class, and Defendant has no defenses unique to Plaintiff.

59. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

    a. Whether Defendant obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

    b. Whether Defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

    c. Whether Defendant should be held liable for violations committed on its behalf, if any; and

    d. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

60. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members, such that joinder of all members is impracticable.

61. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

      a.      The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

      b.      The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

      c.      Defendant has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

      d.      Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**<u>COUNT I</u>**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the National DNC Class)**

62.      Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

63.      It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

64.      Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls and/or text

messages to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

65. These violations were willful or knowing.

66. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

67. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the National DNC Class, and Internal Do Not Call Registry Class, respectfully request that the Court enter judgment against Defendant for:

A. Certification of the National DNC Class as alleged herein;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned as counsel for the Class;

D. Damages to Plaintiff and members of the Class pursuant to 47 U.S.C. § 227(c)(5);

E. Injunctive relief for Plaintiff and members of the Class, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendant from making calls to numbers listed on the National Do Not Call Registry;

F. Attorneys' fees and costs, as permitted by law; and

G. Such other or further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 13th day of February, 2025.

                                               */s/ Andrew Roman Perrong*
                                               Andrew Roman Perrong, Esq.
                                               PA Bar #333687 (*Pro Hac Vice*)
                                               Perrong Law LLC
                                               2657 Mount Carmel Avenue
                                               Glenside, Pennsylvania 19038
                                               Phone: 215-225-5529 (CALL-LAW)
                                               Facsimile: 888-329-0305
                                               a@perronglaw.com