**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

MATTHEW VANDERSLOOT, individually
and on behalf of all others similarly situated,

     Plaintiff,

v.

CHARLES BARATTA LLC D/B/A PRIME
MARKETING,

     Defendant.

Case No. 2:24-cv-07096-JMW

Honorable James M. Wicks

**DEFENDANT CHARLES BARATTA LLC'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND AND FACTUAL ALLEGATIONS ............................... 3

    A.    Plaintiff's Original Complaint. ..................................................... 3

    B.    The First Amended Complaint. ..................................................... 3

III.  LEGAL STANDARD .......................................................................... 6

IV.   ARGUMENT ..................................................................................... 7

    A.    The FAC should be dismissed in its entirety because Plaintiff fails
         to plausibly allege direct liability ................................................. 7

         1.    Prime was never identified on any alleged call as the party
              that placed the calls. ........................................................... 8

         2.    Any purported connection to Garcia resulted from a call
              made by Plaintiff. .............................................................. 10

         3.    Plaintiff's alternative allegations for liability are
              unconvincing. .................................................................... 10

    B.    Plaintiff's conflicting complaints are prejudicial and his
         contradicting allegations should be dismissed. .............................. 14

V.    CONCLUSION ................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages(s)**

*Aaronson v. CHW Grp., Inc.*,
   No. 1:18-CV-1533, 2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ....................................11, 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................................7, 10, 11

*Bank v. GoHealth, LLC*,
   No. 19CV5459MKBCLP, 2021 WL 2323282 (E.D.N.Y. Mar. 8, 2021)..................................1

*Bank v. Pro Custom Solar LLC*,
   No. 17CV00613LDHJO, 2020 WL 5242269 (E.D.N.Y. Mar. 31, 2020)..................................8

*Banks v. Pro Custom Solar*,
   416 F. Supp. 3d 171 (E.D.N.Y. 2018) ................................................................................7, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007)..........................................................................1, 8, 10

*Cacho v. McCarthy & Kelly LLP*,
   739 F. Supp. 3d 195 (S.D.N.Y. 2024)......................................................................................13

*Colliton v. Cravath, Swaine & Moore LLP*
   No. 08 CIV 0400 (NRB), 2008 WL 4386764  (S.D.N.Y. Sept. 24, 2008),
   aff'd, 356 F. App'x 535 (2d Cir. 2009)....................................................................................15

*Dhir v. Carlyle Grp. Emple. Co.*,
   No. 16-cv-06378-RJS, 2017 U.S. Dist. LEXIS 162386 (S.D.N.Y. Sept. 29,
   2017) ............................................................................................................................................7

*Gibson Brands, Inc. v. John Hornby Skewes & Co.*,
   No. CV 14-00609, 2014 U.S. Dist. LEXIS 169608 (C.D. Cal. Dec. 8, 2014) ........................7

*Hesse v. Godiva Chocolatier, Inc.*,
   463 F. Supp. 3d 453 (S.D.N.Y. 2020)......................................................................................12

*Hurley v. Messer*,
   No. CV 3:16-9949, 2018 WL 4854082 (S.D.W. Va. Oct. 4, 2018) ......................................10

*Lee v. Springer Nature Am., Inc.*,
   No. 24-CV-4493 (LJL), 2025 WL 692152 (S.D.N.Y. Mar. 4, 2025)......................................12

*Melito v. Am. Eagle Outfitters, Inc.*,
   No. 14-CV-02440 (VEC), 2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015)........................7, 8, 9

*Metzler v. Pure Energy USA LLC*,
　　No. 21-CV-9798 (VEC), 2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023) ..........................1, 9, 13

*Roylance v. ALG Real Est. Servs., Inc.*,
　　No. 5:14-CV-02445-PSG, 2015 WL 1522244 (N.D. Cal. Mar. 16, 2015) ...............................8

*Sander v. Enerco Grp., Inc.*,
　　No. 21 CV 10684 (VB), 2023 WL 1779691, (S.D.N.Y. Feb. 6, 2023 ....................................15

*Schleifer v. Lexus of Manhattan*,
　　No. 17-CV-8789 (AJN), 2019 WL 4640055 (S.D.N.Y. Sept. 24, 2019)................................12

*Sheski v. Shopify (USA) Inc.*,
　　No. 19-CV-06858-HSG, 2020 WL 2474421 (N.D. Cal. May 13, 2020)................................9

*Smith v. State Farm Mut. Auto. Ins. Co.*,
　　30 F. Supp. 3d 765 (N.D. Ill. 2014) .....................................................................................1

*Vessal v. Alarm.com*,
　　No. 17 C 2188, 2017 WL 4682736 (N.D. Ill. Oct. 18, 2017) ....................................................9

**Statutes**

47 U.S.C. § 227(c)(3)(F) ................................................................................................................7

Telephone Consumer Protection Act, 47 U.S.C. § 227 .................................................................1

**Other Authorities**

Fed. R. Civ. P. 8 ............................................................................................................................3

Fed. R. Civ. P. 12(b)(6)...............................................................................................................1, 7

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Charles Baratta, LLC, d/b/a Prime Marketing Source ("Prime"), moves the Court for an order dismissing Plaintiff's First Amended Complaint ("FAC") with prejudice, on the grounds that Plaintiff fails to state a claim upon which relief may be granted.

## I.   <u>INTRODUCTION</u>

It is Plaintiff's obligation to provide the grounds of his entitlement to relief, and he must do so without bald labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955, 1959 (2007). Direct liability pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), is universally known to exist only against the actual maker of the call(s) at issue. *See Metzler v. Pure Energy USA LLC*, No. 21-CV-9798 (VEC), 2023 WL 1779631, at *5 (S.D.N.Y. Feb. 6, 2023); *Bank v. GoHealth, LLC*, No. 19CV5459MKBCLP, 2021 WL 2323282, at *11 (E.D.N.Y. Mar. 8, 2021), *R&R* adopted, No. 19CV5459MKBCLP, 2021 WL 1884671 (E.D.N.Y. May 11, 2021), *aff'd*, No. 21-1287-CV, 2022 WL 1132503 (2d Cir. Apr. 18, 2022); *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014) (same: absence of sufficient allegations to show that defendant made calls supporting direct liability).

Plaintiff's only theory of liability (direct) fails because the FAC presents no allegations that make any logical sense to sufficiently state a claim against Prime, for the calls in question here. Specifically, the FAC fails for numerous reasons: (1) among the over 100 calls Plaintiff supposedly received, he never alleges that Prime was ever mentioned or identified on a single call; (2) any purported connection to Christopher Garcia (who Plaintiff maintains is a Prime employee), stems from an initial call placed by Plaintiff not vice versa; and (3) he presents zero non-conclusory facts to support his contention that a 210-405-8263 phone number was owned and operated by Prime.

25903182

Quite the opposite, the FAC suggests many reasons why liability is improper. By example, Plaintiff contends that the two individuals who made the calls were actually employees of Prime and just using fictitious names. Yet he also claims that those same individuals repeatedly called him to ask whether Prime had contacted him and sent him a retainer agreement. It defies logic that Prime would repeatedly call Plaintiff to ask him if he had heard from Prime yet. Candidly, Plaintiff's described fact pattern would be of sound logic if a third-party had placed the calls (though to be clear, Prime still denies that Plaintiff adequately alleged vicarious liability). Furthermore, the 210-405-8263 telephone number bears an area code entirely unrelated to Prime, and the FAC instead shows that questions asked by the callers demonstrate the implausibility of Prime's involvement in placing any calls. And these reasons are all without addressing—for the moment—the contradictions between the original complaint and the FAC.

Finally, Plaintiff made the choice to abandon a theory of vicarious liability after this Court's prior Order, and he instead intentionally hinges his claim solely on a theory of direct liability:

> MR. PERRONG: We're pursuing direct liability.
> …
> THE COURT: Okay. So if [Prime] prevails, it's game over. Right?
> MR. PERRONG: Understood.

(*See* Tr. of Civil Cause for Pre-Motion Conf., 11:12-19, April 3, 2025); (Dkt. 32.)

To escape dismissal, Plaintiff is required to demonstrate that Prime is directly liable for the at-issue calls placed by third parties. (*Id*. ¶¶ 22–42) (calls by Tiffany from Medical Health Department and DeAndre from Legal Helpers.) But like its previous iteration, Plaintiff's new pleading relies almost exclusively on conclusory allegations that this Court should not recognize. The FAC fails to plausibly allege that Prime made any calls. This action should be dismissed with prejudice.

25903182

## II.    BACKGROUND AND FACTUAL ALLEGATIONS

### A.    Plaintiff's Original Complaint.

On October 8, 2024, Plaintiff filed his original complaint against Prime. (Dkt. 1.) In it, he raised both direct and vicarious liability claims. (*Id*.) There, he stated that "[s]tarting in September of 2023, the Plaintiff received over approximately one hundred calls from an individual named 'Tiffany'" on behalf of what he deemed to be a fictitious entity named "Medical Health Department." (*Id*. ¶ 19.) Plaintiff's original complaint sought to hold Prime liable for the calls allegedly made by a third party in violation of the TCPA. (*See generally* Dkt. 1.)

On January 24, 2025, Prime filed a motion to dismiss arguing, *inter alia*, that Plaintiff could not satisfy Rule 8 standards. (Dkt. 11, 25–26.) Prime addressed the original complaint's lack of any factual specificity demonstrating: (a) that Prime placed numerous calls to Plaintiff, or at minimum, (b) how Plaintiff supposedly ascertained that all calls were "uncovered as originating from the Defendant." (*Id*.)

After this Court noted that Prime "made a strong showing that Plaintiff's claims may lack merit," and that "Plaintiff's theory of vicarious liability will likely fail" in granting a stay of discovery, (Minute Order, Feb. 7, 2025), Plaintiff decided not to oppose Prime's motion and instead filed the FAC. In a transparent effort to avoid the pleading deficiencies identified by this Court, Plaintiff abandons the vicarious liability theory and instead now alleges that Prime directly made all the calls. (*See generally* FAC, Dkt. 28.)

### B.    The First Amended Complaint.

During the parties' hearing on Prime's pre-motion letter for leave to file its motion to dismiss the FAC, Prime further identified holes in Plaintiff's allegations and confirmed Plaintiff's abandonment of any vicarious liability theory. (*See* Dkt. 29, 31); (*see also* Dkt. 30) (Plaintiff stating that "this is a case of direct, not vicarious, liability.") Therefore, on the record, Plaintiff

3

entered an oral stipulation that this action proceeds solely on a direct liability theory and "does not encompass a claim of vicarious liability." (Dkt. 31.) The Court entered an order to that effect. (*Id*.) (this case proceeds "solely with respect to a direct liability claim.")

In the FAC, Plaintiff includes a host of new facts. Most of them are irrelevant "filler" (e.g., providing numerous Caller ID numbers that are not referenced again), and others contradict either his original complaint or are internally at odds in the FAC. Contradicting his original complaint, Plaintiff now claims that the first call he received came—no longer from Tiffany—but from a new individual named "DeAndre, who identified himself to Plaintiff as calling from 'Legal Helpers.'" (Dkt. 28 ¶ 24.) Also, starkly different from the original allegations, the FAC now maintains that "[s]tarting on August 30, 2023," Plaintiff received over 100 calls "from various potentially fictitiously named individuals, including "Tiffany," "DeAndre" from "Legal Helpers" and "Christopher," who Plaintiff contends sought to solicit him for legal representation in a Camp Lejeune claim. (*Id*. ¶¶ 22–24. )

While he previously alleged that his first call occurred in September 2023, that Tiffany initiated the over 100 calls, and that on January 10, 2024, Plaintiff received at least seven calls from Tiffany, (Dkt. 1 ¶¶19–20), the FAC now asserts something different; claiming that from September 4, 2023 through January 10, 2024, Plaintiff "received at least 69 calls" from both Tiffany at Medical Health Department and an entirely new individual named DeAndre from Legal Helpers. (Dkt. 28 ¶ 26.) He argues that these telemarketing calls were placed to his "residential, non-commercial telephone number" (208) XXX-XXXX. (*Id*. ¶ 15.)

Plaintiff asks the Court to conclude "[f]or avoidance of any doubt," that "all these calls were placed directly by Defendant Prime Marketing Source." (*Id*. ¶ 23.) He claims to have "positive proof" (*Id*. ¶ 25) of Prime's involvement in placing the calls, and support for his assertion that Prime used fake names like "Medical Health Department" and "Legal Helpers" to place each

4

25903182

call. (*Id.* ¶ 26.) Plaintiff alleges that various phone numbers were used to call him in the following ways:

- Around September 18, 2023, Tiffany and DeAndre purportedly called and texted Plaintiff "to ascertain why the Plaintiff had not received a retainer agreement which was to be sent to his email, including from the telephone number 615-219-6257." (*Id.* ¶ 27.)

- On September 20 and 27, 2023, DeAndre from Legal Helpers texted Plaintiff from 210-405-8263. (*Id.* ¶ 28.)

- On September 28, 2024, seemingly one year later, Plaintiff sent a text to 615-219-6257, requesting to be placed on an internal Do-Not-Call list, but allegedly received further contact from Tiffany at that same number. (*Id.* ¶ 30.) Plaintiff claims that he also received a phone call from Tiffany, originating from 713-357-5174. (*Id.*)

- On January 10, 2024, Plaintiff allegedly received at least seven calls from 713-405-3514, and that Tiffany identified herself as calling from "Medical Health Department." (*Id.* ¶ 31.) Plaintiff states that during one of these calls, Tiffany inquired about whether "Plaintiff had received calls from her 'law associate' calling from the telephone number 954-800-2991" (*Id.* ¶ 32.)

- Plaintiff alleges that he called 954-800-2991 and spoke with one "Chrisopher Garcia" who provided a call back number 954-799-8058 and email address. (*Id.* ¶ 33.)

- Plaintiff alleges that he received text messages from "Chris G" and "Christopher" on or around January 10, 2024, from the phone number 210-405-8263. (*Id.* ¶ 36–38.)

- Plaintiff alleges that on January 17, 2024, he also received a call from "Chris" and a text from "Tiffany," from different phone numbers 210-405-8263 and 615-219-6257. (*Id.* ¶ 39.)

- Plaintiff alleges that he received text messages from "Christopher Gee" and "Chris," from the 210-405-8263 phone number. (*Id.* ¶¶ 40–42.)

Plaintiff maintains that "Tiffany" once inquired about whether Plaintiff "had received calls from her 'law associate' calling from" a different telephone number, 954-800-2991. (*Id.* at ¶ 32.) Of course, if Tiffany was Prime, and if the "law associate" was also Prime, it makes no sense that Tiffany would ask such a question in the first place.

25903182

Regardless, the answer to Tiffany's question was apparently "no," or at the very least Plaintiff does not allege that he received any calls from the "law associate" during this time. (*Id. generally*.) Notwithstanding, after his call with Tiffany, Plaintiff allegedly dialed the -2991 number above, and was connected to "Chrisopher Garcia," an alleged employee of Prime. (*Id.* ¶¶ 32–33.) For purposes of clarity, Plaintiff's first alleged contact with Prime was when he called Prime, and he does not contend that he was ever contacted by, or spoke with, Prime prior to the call he initiated.

After speaking to Mr. Garcia, Plaintiff contends that Garcia sent him an email from an email address with the domain "primemarketingsource.com." (*Id.*) From this, Plaintiff concludes that subsequent communications revealing the same email (*Id.* ¶¶ 37, 44), coming from the 210-405-8263 (the "-8263") phone number, would uncover Prime to be the entity that placed all calls to Plaintiff. (*Id.* ¶¶ 45–46, 48.) As Plaintiff alleges that his telephone number is a residential telephone number and listed on the DNC Registry, and because he purportedly did not consent to the calls, he argues that the calls violated Section 227(c)(5) of the TCPA. (*Id.* ¶¶ 16–17, 49–52.) Thus, Plaintiff seeks to hold Prime liable for each call. (*Id.* ¶ 66.)

The FAC does not sufficiently connect the facts regarding how Plaintiff came to conclude that Prime placed the at issue calls. He does not state that: any representative who initiated a call to Plaintiff admitted to placing calls on behalf of Prime, identified themselves as employees of Prime, nor does Plaintiff allege any facts to suggest that the supposed "law associate" not identified in the FAC (¶ 32), is in any way related to Prime.

The FAC is built on speculative deficiencies that warrant dismissal.

## III.     LEGAL STANDARD

To survive a motion to dismiss, the complaint must contain "sufficient factual matter" and "factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint, however, cannot simply plead facts that are merely consistent with the conclusion that a defendant is liable. *Id.* Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Nor is the Court bound to accept as true a legal conclusion couched as a factual allegation. *Id. See also Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-02440 (VEC), 2015 WL 7736547, at *3 (S.D.N.Y. Nov. 30, 2015) (granting defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim, highlighting that "a complaint does not suffice 'if it tenders naked assertions devoid of further factual enhancement.'")

And critically for purposes of the specific facts of this case, the Court is permitted to "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); e.g., *Dhir v. Carlyle Grp. Emple. Co.*, No. 16-cv-06378-RJS, 2017 U.S. Dist. LEXIS 162386, *20 (S.D.N.Y. Sept. 29, 2017) ("That theory, however, contradicts not only common sense, but also other allegations in Plaintiffs own complaint."); accord, e.g., *Gibson Brands, Inc. v. John Hornby Skewes & Co.*, No. CV 14-00609, 2014 U.S. Dist. LEXIS 169608, *7 (C.D. Cal. Dec. 8, 2014) ("[A] complaint does not state a plausible ground for relief if it is illogical or plainly at odds with common sense.").

## IV.   ARGUMENT

### A.   The FAC should be dismissed in its entirety because Plaintiff fails to plausibly allege direct liability.

The TCPA prohibits "any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in [the DNC] database." 47 U.S.C. § 227(c)(3)(F). Per these restrictions, direct liability in a private action is therefore attributable to parties that make or transmit the telephone calls. Indeed, courts have long emphasized this threshold by stating that as it pertains to direct liability, a plaintiff must allege that a defendant actually initiated an unlawful telemarketing call. *Banks v. Pro Custom Solar*, 416 F. Supp. 3d 171, 173 (E.D.N.Y. 2018). This

7

District recognized that relief is appropriate against a defendant only when it must have initiated the call by taking steps "necessary to **physically place a telephone call**." *Bank v. Pro Custom Solar LLC*, No. 17CV00613LDHJO, 2020 WL 5242269, at *2 (E.D.N.Y. Mar. 31, 2020) (emphasis added) (*citing In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6582 (2013)).

### 1.     *Prime was never identified on any alleged call as the party that placed the calls.*

There are simply no avenues to direct liability in this case. Plaintiff's FAC relies on absolute statements as to direct liability, as did the original complaint (though ironically there, as to vicarious liability), to assert entitlement to relief. Plaintiff alleges that Prime violated the TCPA by using "various fictitiously named and non-existent companies" to place over approximately 100 calls from August 30, 2023 until January 2024. (Dkt. 28 ¶¶ 22–31.) But these sorts of empty allegations do not nudge Plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. So too, his contention that Plaintiff received unsolicited phone calls from two individuals, both of whom Plaintiff does not deny identified themselves not as Prime but as callers on behalf of other entities—precisely "Legal Helpers" and "Medical Health Department," is just the sort of assertion that courts routinely dismiss as insufficient. Such allegations are silent as to facts showing that Prime physically placed any calls. *See e.g.*, *Roylance v. ALG Real Est. Servs., Inc.*, No. 5:14-CV-02445-PSG, 2015 WL 1522244, at *6 (N.D. Cal. Mar. 16, 2015), R&R adopted as modified, No. 14-CV-02445-BLF, 2015 WL 1544229 (N.D. Cal. Apr. 3, 2015).

In *Roylance*, the Northern District of California held that direct liability was not proper because the plaintiff failed to allege that the defendant made the calls herself, nor did plaintiff sufficiently show that the defendant had the calls made on her behalf. Courts in the Second Circuit concur. *See e.g.*, *Melito*, 2015 WL 7736547, at *4. In *Melito*, the court similarly concluded that

Plaintiffs presented conclusory assertions. There, the court found that as to whether Experian sent or caused text messages to be sent, Plaintiffs simply asserted legal conclusions "devoid of further factual enhancement. Because Plaintiffs do not plead that Experian 'made,' i.e., physically placed or actually sent, the text messages, the [complaint] fails to state a claim that is plausible on its face." *Id.*; *see also Metzler*, 2023 WL 1779631, at *5 ("there are no further allegations that associate that number with any subscriber, let alone with [defendant]." Thus, the "FAC simply contains no factual allegations supporting Plaintiff's bald conclusion that the number from which the voicemail originated is 'owned/operated by or on behalf of Defendant.'")

Indeed, DeAndre identified himself as calling on behalf of Legal Helpers and Tiffany identified herself as calling on behalf of Medical Health Department. (Dkt. 28 ¶¶ 24, 26.) The calls Plaintiff allegedly received (*Id.* 22–32), starting on August 30, 2023 until about January 10, 2024, were initiated by DeAndre from Legal Helpers and Tiffany from Medical Health Department. (*Id.*) Neither individual so much as mentioned Prime in any capacity. What is more, the FAC does not include a plausible allegation of any connection between Prime and these entities. Consequently, the Court should find that direct liability is not proper here. *See Sheski v. Shopify (USA) Inc.*, No. 19-CV-06858-HSG, 2020 WL 2474421, at *4 (N.D. Cal. May 13, 2020) (granting defendant's motion to dismiss TCPA claims because plaintiff failed to plead sufficient facts to show defendant sent text messages) (*quoting In the Matter of the Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)); *Vessal v. Alarm.com*, No. 17 C 2188, 2017 WL 4682736, at *2 (N.D. Ill. Oct. 18, 2017) (holding that "[t]here are no allegations in the complaint, and [plaintiff] does not argue that [defendant] initiated the phone calls in the sense of taking the steps to

9

physically place a call. Accordingly, plaintiff has not alleged facts supporting direct liability under the TCPA.") (Emphasis added).[1]

### 2. *Any purported connection to Garcia resulted from a call made by Plaintiff.*

Plaintiff's contention (Dkt. 28 ¶ 35), that a connection to Prime exists through "Christopher Garcia," also does not go the distance. He admits that Tiffany purportedly provided Plaintiff with a phone number (954-800-2991), which Plaintiff chose to dial. In other words, Prime did not initiate calls that led to Plaintiff's communications with Christopher Garcia. (*Id.* ¶ 33.) During and due to the call Plaintiff placed, he alleges that he spoke with Garcia by phone, text, and email, all of which appear to have occurred on the same day on January 10, 2024. (*Id.* ¶¶ 33–38.) Thereafter, he received one call and two text messages on January 17, 2024, as well as on the following day. (*Id.* ¶¶ 39–40.) It is true that until he voluntarily contacted Garcia, Plaintiff had previously received zero phone calls initiated by Garcia. Yet, Plaintiff concludes that his investigation bore "positive proof" "solidifying" that Defendant directly dialed all at issue calls, and that "'Legal Helpers' is Defendant Prime Marketing Source." (*Id.* ¶¶ 25, 27.) The standard requires more than conceivable beliefs and conclusions. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Plaintiff's FAC fails to measure up.

### 3. *Plaintiff's alternative allegations for liability are unconvincing.*

Plaintiff is required, but fails to make a plausible showing of how he reached the conclusion that different entities that called him, were "merely [fictitious names] used by the Defendant when

---

[1] Other circuit courts have similarly held that when a defendant did not "physically place" the telephone calls at issue, direct liability fails. *See e.g., Hurley v. Messer*, No. CV 3:16-9949, 2018 WL 4854082, at *3 (S.D.W. Va. Oct. 4, 2018) (stating that "First, there are simply no facts suggesting that Defendant [ ] physically placed the telephone calls at issue. Second, the Court finds that the facts alleged also are insufficient to support an argument that Defendant [ ] was so involved in placing the calls that it could be deemed to have initiated them.") In *Hurley*, the district court explained that nothing—for example the defendant's contribution "to the content, timing, or manner the calls were made"—supported a claim of direct liability.

directly dialing its calls to evade detection." (Dkt. 28 ¶ 25); *Banks v. Pro Custom Solar*, 416 F. Supp. 3d 171, 173 (E.D.N.Y. 2018) (plaintiff fails to allege that defendant initiated the calls, which is required to successfully plead direct liability) (*citing Melito*, 2015 WL 7736547, at *4). The Complaint fails to flesh out a plausible connection between Tiffany, DeAndre, Christopher Garcia, and Prime. *Iqbal*, 556 U.S. at 678 (the pleading standard requires the complaint to assert more than just "facts that are 'merely consistent with' a defendant's liability, [otherwise] it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"")

The sole remaining allegation on which Plaintiff's entire claim rests is, that some calls came from the same -8263 phone number. (Dkt. 28 ¶ 26–29.) Plaintiff alleges next to nothing about any other phone numbers referenced in his Amended Complaint and focuses his allegations almost exclusively on the -8263 number. The FAC states that in September 2023, DeAndre used the -8263 phone number to text Plaintiff (*Id.* ¶ 28), and that the phone number was later used in January 2024 by "Chris G," "Chris," "Christopher" to text and call Plaintiff. (*Id.* 36–40.) He boldly contends that the -8263 number is critical in exposing a direct connection between DeAndre from Legal Helpers, Christopher, and Prime Marketing Source. (*Id.* ¶¶ 43–44.) But no connection is pled. *See Aaronson v. CHW Grp., Inc.*, No. 1:18-CV-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) (stating that "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls to plaintiff's cellular phone") (citing cases).

First, courts like in *Aaronson* held that under similar circumstances, the lone fact marshalled in the complaint, that "one of the calls made to plaintiff was from a telephone number that [ ] is one of the Defendant's many telephone numbers," is simply insufficient and much too conclusory. *Id.* In that case, the court concluded that plaintiff must present "facts to explain why plaintiff believes the identified phone number is owned by defendant," or else the claim "amounts

to nothing more than another conclusory allegation that defendant made the calls to plaintiff's cellular phone." *Id.* In the end, the court determined that plaintiff failed to plead facts sufficient to support a theory of direct liability under the TCPA because his allegations did not show "plausibly that defendant actually, physically initiated the telephone calls at issue." *Id.* Applying the same reasoning here, Plaintiff cannot simply conclude that a through line exists between Tiffany from Medical Health Department, DeAndre from Legal Helpers, and Prime, because of the -8263 number. (*See* Dkt. 28 ¶¶ 43–44.) Instead, he must allege or identify facts to explain what steps Prime took to place the calls, or any other detail about Prime's ownership of the number. The FAC asserts none of the requisite details.

Second, what is known, is that the -8263 number shows a "210" area code. Whereas, Prime—http://www.primemarketingsource.com/—is a business located in the State of New York. A quick online search would confirm that New York phone numbers do not bear a "210" area code. Instead, that area code is local to San Antonio, Texas where Prime is neither located nor does Plaintiff allege it to have ever done business there.[2] Plaintiff's assertion regarding the -8263 phone number fails the plausibility standard because he does not explain, but only loosely infers, that Prime made the approximately 100 calls alleged in the FAC.

Third, Plaintiff claims that an email (*Id.* ¶¶ 33, 37) and the use of the -8263 phone number (*Id.* ¶¶ 45–48) prove that Prime and the other named entities are actually the same. Cutting out all the meaningless filler allegations from the FAC, this is the only substantive allegation that attempts

---

[2] *Schleifer v. Lexus of Manhattan*, No. 17-CV-8789 (AJN), 2019 WL 4640055, at *4 n.1 (S.D.N.Y. Sept. 24, 2019) (the court takes judicial notice of area codes for New York City); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) (a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination); *see also Lee v. Springer Nature Am., Inc.*, No. 24-CV-4493 (LJL), 2025 WL 692152, at *6 (S.D.N.Y. Mar. 4, 2025) (same).

to "close the gap" to show that Prime made the calls. But this is illogical and makes no sense, on several different levels.

If DeAndre and Tiffany were truly representatives of Prime—as Plaintiff alleges—they would not be contacting Plaintiff to "ascertain why" Prime had not sent him a retainer agreement. (FAC ¶ 27.) And this is particularly true if Garcia, the person who allegedly sent the retainer agreement, was also DeAndre. This is tantamount to alleging that Garcia (posing as DeAndre) called Plaintiff to ask if Garcia had sent the retainer. This makes no sense.

And even setting aside the allegedly fictitious individual names and focusing on the entity names, if Legal Helpers and Medical Health Department were Prime, it likewise makes no sense why Prime would call Plaintiff asking if Prime had contacted him. (*Id*.) Similarly, Plaintiff's claim that Tiffany asked whether Plaintiff had been contacted by an unidentified "law associate" makes no sense if Tiffany and the "law associate" were both Prime (*Id*. ¶¶ 32, 46), because it is yet again essentially an allegation that "Prime called Plaintiff to ask if Prime had called Plaintiff." Plaintiff's incoherent and disjointed allegations should be rejected as this district has done many times over. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 213 (S.D.N.Y. 2024).

The only way these allegations could make plausible sense is if Legal Helpers and Medical Health Department were, in fact, third parties, and were calling to inquire if Prime (the "law associate") had contacted Plaintiff yet. To be clear, Prime denies that such allegations would be sufficient to plausibly allege vicarious liability, for the exact same reasons as set forth in its prior motion to dismiss. But that is the only fact pattern that makes logical sense, and it is completely illogical to suggest that these facts raise a plausible inference that Prime directly made the at-issue calls. *See Metzler*, 2023 WL 1779631, at *6 (stating that even if plaintiff's facts confirmed an alleged voicemail related to the defendant, the facts still "do not allow the Court to infer that

Defendant—as opposed to a telemarketer working to drum up business for Defendant—made the call at issue.")

**B.**    **Plaintiff's conflicting complaints are prejudicial and his contradicting allegations should be dismissed.**

As a final matter, and while Plaintiff's FAC independently fails for the reasons set forth above, it still bears noting the contradictions between the original complaint and FAC when evaluating the implausibility of Plaintiff's current claims, that Prime made the calls.

For example, Plaintiff originally alleged that the telephone calls were first made by Tiffany and Medical Health Department in September of 2023. (Dkt. 1 ¶ 19.) But it turns out that was not true, as Plaintiff now alleges that the calls were first made by DeAndre of Legal Helpers in August of 2023. (FAC ¶ 24.) Plaintiff originally alleged that Tiffany made all 100+ telephone calls. (Dkt. 1 ¶ 19.) But it turns out that was also not true, as he now alleges that 30% of the calls were made by DeAndre. (FAC ¶ 26.) Plaintiff originally alleged that Mr. Garcia providing his email address and sending Plaintiff an email is how he "uncovered" that Prime was supposedly responsible for the calls. (Dkt. 1 ¶ 23.) Yet, Plaintiff now claims that the "critical" facts were discovered after this call, over the next several days, owing to his illogical claim—that boiled down, Prime was calling Plaintiff to ask if Prime had called him. (FAC ¶¶ 36-43.)

Perhaps most obviously, Plaintiff originally sought to hold Prime vicariously liable for the calls. (*See generally* Dkt. 1.); (*see also* Pl.'s Response to Pre-Motion Letter, Dkt. 17, discussing standards for vicarious liability under the TCPA and arguing that Prime can be held liable for calls made on its behalf, even if not placed by Prime directly.) Yet, less than a week after this Court noted that "Plaintiff's theory of vicarious liability will likely fail" (Minute Order, Feb. 7, 2025), Plaintiff filed his FAC and now full throatily proclaims that Prime made the calls.

This District has recognized the damage of Plaintiff's pleading tactic. While "an amended complaint ordinarily supersedes the original, and renders it of no legal effect, in cases where

25903182

allegations in an amended pleading directly contradict pleadings in the original complaint, courts have disregarded the amended pleading." *Sander v. Enerco Grp., Inc.*, No. 21 CV 10684 (VB), 2023 WL 1779691, at *4 (S.D.N.Y. Feb. 6, 2023). *See also Colliton v. Cravath, Swaine & Moore LLP*, in which plaintiff amended his complaint after defendant presented arguments in a pre-motion letter to the court, to assert new material allegations for the first time. No. 08 CIV 0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009). The court concluded that plaintiff's conduct was "a transparent attempt" "to amend his pleading in order to avoid a dispositive defense raised by [the defendant]." *Id.* (*citing Wallace v. New York City Dep't of Corr.*, No. 95 CV 4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996)) (stating that when a "plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss" and "directly contradicts the facts set forth in his original complaint," a court is authorized take note of the facts described in the original complaint.

Plaintiff's allegations make no logical sense as to direct liability and do not create a plausible inference that Prime made the calls. The only way the alleged facts make any sense is if a third party made the calls, and if the third party had been following up with Plaintiff to see if Prime had contacted him. But Plaintiff—quite intentionally to perform an end run around this Court's prior order—has disavowed pursuing any vicarious liability theory. To put it bluntly, and far from correcting pleading deficiencies, Plaintiff's theory of liability in the FAC is even weaker than his theory of liability in the original complaint.

## V.   <u>CONCLUSION</u>

Simply put, Plaintiff's allegations do not support a plausible claim of direct liability and must be dismissed. He has failed to sufficiently amend the Complaint and assert facts, not conclusions, to show that Prime acted directly to physically place the at issue calls. Accordingly, the Court should dismiss the FAC with prejudice.

25903182

Dated: May 2, 2025

Respectfully submitted,

/s/ David M. Krueger
David M. Krueger (0085072) (*Pro Hac Vice*)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone: 216.363.4500
Facsimile: 216.363.4588
Email: dkrueger@beneschlaw.com

Laura E. Kogan (0087453) (*Pro Hac Vice*)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone: 216.363.4500
Facsimile: 216.363.4588
Email: lkogan@beneschlaw.com

*Attorneys for Defendant Charles Baratta, LLC, d/b/a Prime Marketing Source*

16

25903182

## **CERTIFICATE OF SERVICE**

The foregoing document was electronically filed on May 2, 2025. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ David M. Krueger*
David M. Krueger (0085072) (*Pro Hac Vice*)

17

25903182