# THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

**MATTHEW VANDERSLOOT,** individually and on behalf of all others similarly situated,

*Plaintiff,*

*v.*

**CHARLES BARATTA LLC D/B/A PRIME MARKETING SOURCE**

*Defendant.*

Case No. 24-7096

**CLASS ACTION**

**JURY TRIAL DEMANDED**

---

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO BIFURCATE DISCOVERY

---

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ................................................................................................................ 1

    1.    Investigation into whether defendant is liable is just as burdensome for the Plaintiff as for other class members. Rather than being "distinct" from class issues, it is the class issue. Bifurcation is unnecessary and prejudicial ............................................................. 3

    2.    Bifurcation would be inefficient and counterproductive. ....................................... 9

    3.    This case is distinct from *Harris* and its progeny because it involves systemic practices, not individualized issues. ................................................................................ 14

CONCLUSION .................................................................................................................. 18

CERTIFICATE OF WORD COUNT ................................................................................... 18

CERTIFICATE OF SERVICE ............................................................................................ 18

# TABLE OF AUTHORITIES

## Cases

*Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. 15-2057, 2018 WL 501413 (C.D. Cal. Jan. 5, 2018) ................................................................................................................................ 11

*Akselrod v. MarketPro Homebuyers LLC*, No. CV CCB-20-2966, 2021 WL 100666 (D. Md. Jan. 12, 2021 ........................................................................................................................ 16

*Bond v. Folsom Ins. Agency LLC*, No. 3:24-CV-2551-L-BN, 2025 WL 863469 (N.D. Tex. Mar. 19, 2025) ...................................................................................................................... 14

*Braver v. Northstar Alarm Sercs., LLC*, 2019 U.S. Dist. LEXIS 118080 (W.D. Okla. 2019) ....... 9

*Carter v. Health Insurance King Agency, LLC*, No. 3:25-cv-00005-SHL-WPK, ECF No. 31 (S.D. Iowa Aug. 18, 2025) ........................................................................................... 4, 5

*Charvat v. Plymouth Rock Energy, LLC*, No. 15-CV-4106, 2016 U.S. Dist. LEXIS 6778 (E.D.N.Y. Jan. 12, 2016) ............................................................................................... 12

*Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294 (S.D.N.Y. 2012) ................................... 11

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .............................................................. 11, 12

*EQT Prod. Co. v. Terra Servs., LLC*, No. 14-1053, 2014 U.S. Dist. LEXIS 203680 (W.D. Pa. Oct. 21, 2014) ..................................................................................................................... 10

*Hall-Landers v. New York Univ.*, No. 20CIV3250GBDSLC, 2023 WL 8113243 (S.D.N.Y. Nov. 22, 2023) ...................................................................................................................... 6, 7

*Harris v. Shore Funding Sols. Inc.*, No. 23CV00789JMAJMW, 2023 WL 3440077 (E.D.N.Y. Apr. 21, 2023) ........................................................................................................... 15, 17

*Hartley-Culp v. Credit Mgmt. Co*, No. 3:cv-14-0282, 2014 U.S. Dist. LEXIS 130308 (W.D. Pa. Sept. 15, 2014) ............................................................................................................... 10

*In re Hamilton Bancorp. Inc. Securities Litigation*, No. 01-CIV-0156, 2002 WL 463314 (S.D. Fla. Jan. 14, 2002) ............................................................................................................ 13

*In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, No. 5:11-CV-90, 2014 WL 316476, at *6-7 (N.D.W. Va. Jan. 28, 2014) ........................................................................... 9

*In re Plastics Additives Antitrust Litig.*, 2004 U.S. Dist. LEXIS 23989 (E.D. Pa. Nov. 29, 2004) ................................................................................................................................... 13

*Jawk Enters., LLC v. Greenlight Energy, Inc.*, No. 19-CV-4212-ARR-SJB, 2019 WL 5881752 (E.D.N.Y. Nov. 5, 2019) ......................................................................................... 16, 17

*Katz v. Allied First Bank, SB*, No. 22-cv-5277, ECF No. 14 (N.D. Ill. Jan. 3, 2023).................. 12

*Lakeland Reg'l Med. Ctr. v. Astellas US, LLC*, No. 8:10-cv-2008, 2011 U.S. Dist. LEXIS 16684 (M.D. Fla. 2011).................................................................................................... 12

*Leschinsky v. Inter-Cont'l Hotels Corp.*, there were individualized questions of whether the plaintiff received more than one call as required by the statute, as well as whether the plaintiff was individually called using an "ordinary desktop telephone. No. 8:15-CV-1470-T-30MAP, 2015 WL 6150888, at *1 (M.D. Fla. Oct. 15, 2015)................................................. 16

*Nock v. PalmCo Admin., LLC*, No. 24-CV-00662-RDB, 2025 WL 100894 (D. Md. Jan. 15, 2025)......................................................................................................................... 13

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) (cleaned up)....................................... 8

*Pavelka v. Paul Moss Ins. Agency, LLC*, No. 1:22 CV 02226, 2023 WL 3728199 (N.D. Ohio May 30, 2023) ............................................................................................................... 16

*Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, No. CIV.A. 12-2132 FLW, 2014 WL 413534 (D.N.J. Feb. 4, 2014)................................................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................................... 11

*Woodard v. Quote Storm Holdings, LLC*, No. 23 C 55, 2023 U.S. Dist. LEXIS 90743 (N.D. Ill. May 24, 2023) ................................................................................................................. 9

## Other Authorities

Exhibit A - Defendant's Discovery Responses ............................................................................ 4

Manual For Complex Litigation (Fourth) § 21.15 ..................................................................... 9

**INTRODUCTION**

The Court should deny Defendant Charles Baratta LLC d/b/a Prime Marketing Source's ("Prime" or "Defendant") motion to bifurcate discovery (ECF Nos. 40, 41) in its entirety because bifurcation and discovery limitations in this case would be inefficient and prejudicial, especially when considering the correspondingly limited additional classwide discovery called for by the needs of this case.

Defendant contends that it did not place or have anything to do with the telephone numbers or calls at issue, and thus that Prime did not "place[] telephone calls to Plaintiff." Needless to say, the Plaintiff disputes that contention, and the key factual issue here will apply just as equally to the Plaintiff as with all class members. However, based on its own self-serving assertion that it had nothing to do with the illegal calls the Plaintiff alleges Defendant placed using spoofed caller IDs, the Defendant urges the Court to take the significant step of bifurcating discovery. It does so even when, by the Defendant's own admission, and even if the Defendant's contentions are proven true, the class issues here will be identical to the individual issues: whether the telephone calls came from Prime or some entity for which Prime might be directly or vicariously liable. Significantly, Prime has elected to bury its head in the sand and has deficiently responded to the Plaintiff's discovery aimed at addressing that very issue, including refusing to respond to practically any discovery to the extent that it calls upon the issue of vicarious liability, a tactic that a sister Court has recently rejected, as well as on the basis that the Plaintiff did not provide his phone number in the discovery requests he propounded, despite providing the number to counsel for the Defendant. Granting Defendant's motion will simply permit the Defendant to continue its gamesmanship and withhold from Plaintiff, and the Class, the information to which they are entitled.

The ESI and calling records in this case are just as readily obtainable for the Plaintiff as other class members, which casts significant doubt on Defendant's involvement argument. Defendant's threshold "involvement" issue argument is simply a distraction that makes little practical or logical sense. If the Defendant truly had no involvement in the calls, as it claims throughout its motion, it could just as easily respond with that response as to all class members. However, Defendant's discovery responses thus far have painted a different picture. The Defendant had some involvement in the calling conduct but refuses to identify it on the basis of multiple objections, including that it is unable to respond because the discovery responses do not include the Plaintiff's telephone number, which counsel for Plaintiff provided, and which Defendant relied on in its motion to dismiss. If Defendant was involved in the calls, as Plaintiff claims, only then would bifurcation potentially become necessary. And, if this truly is the case, as Defendant seems to insinuate, there is no reason to bifurcate on the basis that discovery should first be directed to individualized issues of involvement: who was involved in the calls and their placement is a uniform question common to all class members. Answering that question and others on a class basis would impose little to no additional burden on Defendant.

Contrary to the Defendant's claims, therefore, the overlap between individual and class discovery is far from minimal; there is significant overlap between what happened here with respect to the Plaintiff as other class members, in addition to a relatively minimal additional burden attendant to classwide discovery beyond individualized discovery. Plaintiff's theory is that Prime called him, and all other class members, using spoofed caller IDs and fictitious names, but which investigation subsequently confirmed were calling from the Defendant. This is systemic conduct that impacted the entire class in the same way, and there is little to no additional burden which will be attendant to discovery into those issues on a classwide, rather

2

than an individualized issue. Indeed, rather than being a "narrow" issue that is "distinct from class issues" rendering bifurcation appropriate, as Defendant concedes, it is *the* class issue. Nor would bifurcation uncover any issues that would resolve the entire case: even if discovery revealed Prime did not directly place the calls as alleged, the Plaintiff may still amend his Complaint and allege vicarious liability based on the evidence adduced, if warranted.

Discovery is therefore necessary to uncover who sent the calls at issue and whether Prime is liable for such unauthorized messages sent to other consumers in the same manner. These issues are at the heart of both Plaintiff's individual claim and the class claims, making bifurcation inappropriate and prejudicial. For these reasons, the Court should deny Defendant's motion in its entirety.

**1.      Investigation into whether defendant is liable is just as burdensome for the Plaintiff as for other class members. Rather than being "distinct" from class issues, it is the class issue. Bifurcation is unnecessary and prejudicial.**

Prime's entire argument for bifurcation rests on a faulty premise: that the case will simply just go away if the Plaintiff is unable to meet his burden of proof, at summary judgment, of demonstrating *direct* liability under the TCPA. Prime misapprehends the Plaintiff's arguments and statement (which it incorrectly labels as a "stipulation") made at the pre-motion conference that the case would be over if the Plaintiff fails to demonstrate direct liability. What Plaintiff's counsel understood the Court's question to mean was that, *at the pleadings stage*, if the Plaintiff pled insufficient facts for a holding of direct liability, as he has pled and continues to assert here, the case would have to be dismissed for failure to plead sufficient facts for a showing of direct liability. In ruling and denying Defendant's motion to dismiss, this Court has ruled that the Plaintiff has pled sufficient facts showing direct liability. However, the Plaintiff can yet amend to plead a theory of vicarious liability if discovery tends to demonstrate facts showing direct

3

liability is not available to Plaintiff but that vicarious liability is a viable theory. The Plaintiff certainly did not concede or give up an ability to amend his complaint at a future date, including to conform to the evidence developed in discovery.

Bifurcation here would prejudice the Plaintiff, be inconvenient, and would neither expedite nor economize this dispute. Start with prejudice to the Plaintiff. What Defendant's strategy here appears to be, as demonstrated through its discovery responses attached herein as Exhibit A, is to object to the disclosure of any evidence in discovery to the extent it does not implicate direct liability. Then, it appears that Defendant is intent on filing a dispositive motion on the basis that the Plaintiff has not developed sufficient evidence probative of his theory of direct liability, while at the same time denying discovery to the Plaintiff that might be probative of a theory of vicarious liability and permitting him to amend the complaint to allege the same.

Another Court recently rejected a similar tactic on manifestly similar circumstances to here. In *Carter v. Health Insurance King Agency, LLC*, attached herein as Exhibit B, the plaintiff filed a complaint in which he alleged that he directly received calls from the defendant. No. 3:25-cv-00005-SHL-WPK, ECF No. 31 (S.D. Iowa Aug. 18, 2025). Defendant there filed, and the court denied, a motion to dismiss, similar to here, premised on the contention that the plaintiff inadequately pled facts to support direct liability. *Id.* And, as here, the defendant there responded to discovery seeking to identify all employees with whom the Plaintiff spoke, as well as "all third parties or sub-vendors used" to make the calls with an objection, similar to here, that the defendant does not make outbound calls and that the vendor it coyly suggested actually placed the calls should not be identified. In rejecting that argument, similar to that the Defendant here advances, the Court noted:

Defendant did answer the question in part by stating it has no campaign to make outbound calls to potential customers. However, it believes information about "vendors" who are companies or individuals that are somehow involved in making or generating calls for it is irrelevant. The question of agency creates a factual issue that warrants discovery. Here, the Court highlights the broad scope of discovery. "The scope of permissible discovery is broader than the scope of admissibility," and "[d]iscovery requests are typically deemed relevant if there is any possibility that the information sought is relevant to any issue in the case." *Kampfe v. Petsmart, Inc.*, 304 F.R.D. 554, 557 (N.D. Iowa 2015). *See also Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992); Fed. R. of Civ. Pro. 26(b)(1). The threshold showing of relevance was made by Plaintiff regarding whether third parties (vendors) are making calls on Defendant's behalf. Once that threshold was met, the burden shifted to Defendant in resisting discovery to show specific facts demonstrating that the discovery is not relevant or how it is privileged or otherwise protected from discovery. The Court concludes Defendant did not meet its burden with regard to this Interrogatory. Plaintiff needs to know whether any third parties are involved and has the right to seek discovery about a possible agency relationship, which may also shed light on the calls Plaintiff alleges he received from Defendant.

The Court went on to explain why pleading direct liability in the complaint did not

foreclose a potential finding and appropriate amendment to allege vicarious liability:

Defendant opposes the extension [to the deadline to amend pleadings], arguing that information about third parties or vendors is not relevant to Plaintiff's claims of direct liability against it based on the current pleadings and facts asserted by both parties. It contends such information might only be relevant to a vicarious liability claim, which Plaintiff has not pleaded.

The Court concludes that good cause exists to extend the Deadline to Add Parties. While Plaintiff's current Complaint focuses on direct liability, the discovery sought about vendors and third parties is relevant to the claims and defenses in this case as detailed above in the Court's analysis regarding Plaintiff's Motion to Compel. . . . At this stage, without full disclosure of the potential involvement of vendors or third parties, it would be premature to foreclose Plaintiff's ability to amend based on newly discovered information. Therefore, the Deadline to Add Parties is extended to thirty days after Defendant provides complete responses to the discovery requests consistent with this Order. This extension balances the need for Plaintiff to have an opportunity to evaluate the information provided with the interest in moving the litigation forward efficiently

Thus, Defendant's motion to bifurcate rests on at least two faulty premises. First,

Defendant's motion seems to seek to limit discovery only to that individualized evidence which

may be probative of *direct* liability. As *Carter* counsels, however, the Plaintiff is at least entitled

to know if there were or were not additional parties or vendors involved in making the calls at issue, and failure to give the Plaintiff the ability to discover and test his assertions and claims, as well as possible alternative theories of liability, would prejudice the Plaintiff. If discovery uncovers evidence that is probative of vicarious liability, in addition to or in lieu of direct liability, then the Plaintiff is entitled to amend to plead those facts: the case isn't over simply because discovery does not uncover evidence of direct liability that was pled at the pleadings stage. If additional entities are or were involved, the Plaintiff is entitled to know their identity and is entitled to amend to add them once their identity and roles are ascertained. As such, resolution of the issue of whether direct or vicarious liability is appropriate will not resolve the entire case, nor will it render trial on vicarious liability issues unnecessary, thus failing to satisfy the first alternative of the *Hall-Landers* test. *Hall-Landers v. New York Univ.*, No. 20CIV3250GBDSLC, 2023 WL 8113243, at *3 (S.D.N.Y. Nov. 22, 2023).

Second, discovery into the disputed issues of liability in this case, including the continued alleged appropriateness of the Plaintiff's direct liability theory, are not narrow, individualized issues, nor are they different as to all class members. Whether the Defendant directly placed all or some of the calls at issue, as Plaintiff contends, the other entities which may have been involved in call placement, the corresponding degrees of liability between them, and the number and scope of the calls they placed, are all questions that can be just as easily answered with respect to the Plaintiff as with all class members. Accordingly, the potentially dispositive issue of liability here, either direct or vicarious, is not distinct from the class issues. Defendant certainly has not identified how limiting discovery in the manner it proposes, without so much as a concrete plan or limitations, would be more convenient, expedite the claims, or economize the proceedings. Given that the information sought on the issue on which Defendant seeks to

bifurcate will apply equally to all class members, bifurcation will have the opposite effect: requiring two rounds of briefing, two rounds of written discovery, and two rounds of inevitable motions to compel. Indeed, the issue of liability, including whether and what type of liability to impose on the Defendant, is *the* class issue, and there is no corresponding significant additional burden attendant production or resolution of that issue on a class basis as opposed to individually. As such, the second alternative of the *Hall-Landers* test is similarly unsatisfied. *Id.*

Perplexingly, Defendant Prime also states that it will serve, and has in fact served, discovery to Plaintiff not only for information that is within its own possession, care, custody, and control, and which the Plaintiff has requested in discovery, which it has thus far refused to respond to, including the billing records and ownership records for each of the telephone numbers at issue which are alleged to be Prime Marketing numbers which contacted the Plaintiff. To this extent, Defendant's entire motion is based on rank speculation and its own say-so that it has nothing to do with any of the calls the Plaintiff received, and then its very refusal to provide evidence tending to prove or disprove that assertion. That is no basis to bifurcate discovery.

Plaintiff's theory and pleading, as recognized by the Court as sufficient at the pleadings stage, is that the Plaintiff has adequately pled a theory of direct liability. The Plaintiff will be required to plead this theory, or an acceptable alternative theory as discovery may reveal, at class certification or summary judgment. As an initial matter, the idea that discovery is limited solely to evidence supporting already-pleaded claims or solely limited to issues of direct liability is contrary to Rule 26(b)(1) as anything "relevant" to "any party's claim or defense." This clearly includes evidence that can develop additional facts or defenses, develop the Plaintiff's legal theories, as well as support new claims and identify new parties. "Discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the

7

issues. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (cleaned up).

Plaintiff needs to know the identit(ies) of any third parties involved on the calls, if any, so that Plaintiff can serve discovery on the Defendant and a subpoena on the third party to identify and to verify if they made contact with the Plaintiff and what the nature of their relationship was. Even if such third parties did not place the calls, as Plaintiff contends, those third parties may still possess evidence of relevance to this case, such as that of consent, or indicate customer lists which would be then loaded into a dialer to call. And that evidence would be just as easily be available to and relevant for the Plaintiff as with respect to the entire class. Defendant cannot talk out of both sides of its mouth by faulting the Plaintiff for not alleging some involvement of some unknown third party (if that is the case) based on information not even within the Plaintiff's control, insinuate that this is actually what happened, and then deny Plaintiff the class discovery necessary to identify such third party vendors (if any) and the nature and scope of their involvement. Either way, bifurcation is inappropriate. If Plaintiff is right, and the Defendant is directly liable, there is no reason why class discovery would be more burdensome than individualized discovery. If Defendant is right, the Plaintiff may still be able to allege a theory of vicarious liability, and in so doing, would be entitled to the same proofs on a class basis, rendering it again no more burdensome. Defendant cannot manufacture a dispute as to liability and then seek to bifurcate discovery on the very information that the Defendant has put at issue.

Other Courts have compelled, let alone refused to bifurcate, discovery aimed at similar issues because the requested evidence is critical to the fact intensive class inquiry, which is identical to the individual inquiry, necessary to resolve the question of whether a call was placed

8

and who placed it, as other courts have held in the TCPA context. *See, e.g., In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, No. 5:11-CV-90, 2014 WL 316476, at *6-7 (N.D.W. Va. Jan. 28, 2014) (granting motion to compel discovery relevant to vicarious liability in a TCPA telemarketing case); *Braver v. Northstar Alarm Sercs., LLC,* 2019 U.S. Dist. LEXIS 118080, *18-25 (W.D. Okla. 2019) (detailing email and other communications as basis for finding vicarious liability in a TCPA telemarketing case); *Woodard v. Quote Storm Holdings, LLC*, No. 23 C 55, 2023 U.S. Dist. LEXIS 90743, at *7-9 (N.D. Ill. May 24, 2023).

Simply put, the Plaintiff, and all class members, need to know whether any third parties are involved and have the right to seek discovery about that relationship, which may also shed light on the calls the Plaintiff received; Defendant cannot resist this discovery merely because it will (allegedly) uncover facts which are inconsistent with those in the complaint. If a third party is involved, the Defendant should identify who it is. Indeed, the Defendant was *required* to identify those parties in its Rule 26(a)(1) disclosures but did not. And if the Defendant has information that materially contradicts the allegations made in the Complaint and showing the Plaintiff is wrong, for example, evidence showing that the Plaintiff spoke to another company before he spoke to the Defendant or that some other company placed at least some of the other calls at issue, the Defendant should provide it. Defendant cannot, however, rely on a manufactured dispute to seek to bifurcate discovery on this basis.

## 2.    Bifurcation would be inefficient and counterproductive.
Bifurcation of discovery is often "counterproductive." Manual For Complex Litigation (Fourth) § 21.15 (2015). To begin, the proposed bifurcation guarantees that the parties will need to duplicate their work. First, the parties would undertake "individual" discovery on liability and all that entails: written discovery requests, depositions, and then expert disclosures and

9

expert depositions, all limited just to the Defendant's direct liability or any possible vicarious liability. Then, Defendant would file a dispositive motion to Plaintiff's individual claims of liability. And then, should the Court deny that motion, the parties have to start all over again, serving discovery requests and taking depositions of the same witnesses a second time, for the same exact liability information, but this time focusing on classwide issues of liability premised on the *very same set of evidence with respect to the Plaintiff*. And after that, there would be a second round of dispositive motions on the class claims. In other words, the parties would engage in much the same discovery differing only in scope of information that is already ESI and just as readily produced in digital format for one individual as one million.

 All told, this means at least two rounds of written discovery for essentially the same evidence, differing only in scope, two rounds of depositions (with the same witnesses being deposed twice), and then two rounds of summary judgment briefing. This is the opposite of judicial economy. Indeed, "bifurcation of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions." *Hartley-Culp v. Credit Mgmt. Co*, No. 3:cv-14-0282, 2014 U.S. Dist. LEXIS 130308, *10 (W.D. Pa. Sept. 15, 2014). The Court should deny Defendant's motion to bifurcate for this reason alone. *See id.* (denying similar motion to bifurcate merits and class discovery in a TCPA case); *EQT Prod. Co. v. Terra Servs., LLC*, No. 14-1053, 2014 U.S. Dist. LEXIS 203680, *4 (W.D. Pa. Oct. 21, 2014) ("Terra's proposal would likely result in deposing the same witnesses twice-once in the liability phase, and again in the damages phase. This is the definition of inconvenience, and the additional cost of duplicative depositions and document review combine to counsel against bifurcation in this case.").

Courts have repeatedly recognized that bifurcating merits and class discovery is often impractical and inefficient because the two are frequently intertwined, also leading to needless discovery disputes. Class certification requires a "rigorous analysis" under Rule 23 - one that "will frequently entail overlap with the merits of the plaintiff's underlying claim" because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); see also *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012). This is especially true in TCPA class actions, where courts have noted that "[t]he distinction between class certification and merits discovery is murky at best and impossible to determine at worst." *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. 15-2057, 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018).

To that end, the basic evidence of who placed the calls at issue and the subscribers of record associated with those numbers, are simply readily available electronically stored records of the type that courts routinely hold are readily accessible on a daily basis, negating any allegations of burden. Once those records are collected, which is no more burdensome for records with respect to the Plaintiff and the calls he received than for other class members, then the Plaintiff, not the Defendant, will then bear the cost of having his expert analyze them to determine class membership. Simply put, there is little to no burden or prejudice on the Defendant and a great prejudice to the Plaintiff, who would be deprived of the information he needs to develop his theory of the case, develop any possible alternative theories, propound additional discovery, and make the "rigorous" showing he is required to at class certification.

As such, apart from the duplication of discovery outlined above, Defendant's proposal is bound to lead to additional discovery disputes and proceedings that would be completely

11

unnecessary without bifurcation, as previewed above. Defendant concedes there is significant overlap between discovery relevant to the merits of Plaintiff's individual claims and issues of class certification (including with respect to any potential vendors). Indeed, "[class certification] analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp.*, 569 U.S. at 33-34 (cleaned up); *Charvat v. Plymouth Rock Energy, LLC*, No. 15-CV-4106, 2016 U.S. Dist. LEXIS 6778, at *6 (E.D.N.Y. Jan. 12, 2016) (cited by Defendant and denying motion to bifurcate merits and class discovery in TCPA action and explaining that "bifurcation would have the opposite effect [of "promot[ing] judicial efficiency or a prompt resolution of the case"]."); *Lakeland Reg'l Med. Ctr. v. Astellas US, LLC*, No. 8:10-cv-2008, 2011 U.S. Dist. LEXIS 16684, *4 (M.D. Fla. 2011) ("[T]he line between 'class issues' and 'merits issues' is practically difficult, if not impossible, to determine."); Notes of Advisory Committee on 2003 Amendments to Fed. R. Civ. Pro. 23(c)(1)(A) ("Active judicial supervision may be required" to avoid "an artificial and ultimately wasteful decision between 'certification discovery' and 'merits discovery.'"). As another Court ruled when denying bifurcation in a TCPA case:

> The Court has reviewed the parties' joint status report. The Court does not see a need to bifurcate discovery in this case. There will be some overlap in discovery here. Discovery as to commonality and typicality under Rule 23 will also apply to the merits of the claim. Moreover, the Supreme Court in *Walmart v Dukes* has said the district court must conduct a rigorous analysis in determining class certification and that will often require some evaluation about facts that go to the merits of a plaintiff's underlying claims. Thus, bifurcating discovery often does not make sense as the lines between "class discovery" and "merits discovery" are significantly blurred.

*Katz v. Allied First Bank, SB*, No. 22-cv-5277, ECF No. 14 (N.D. Ill. Jan. 3, 2023). Other courts have agreed. Recognizing this reality, courts routinely deny bifurcation in TCPA and

other class cases, finding that it would "belie principles of judicial economy, as the Court may be

forced to spend time and resources resolving discovery disputes over what is 'merit' discovery as

compared to 'class' discovery." *In re Plastics Additives Antitrust Litig.*, 2004 U.S. Dist. LEXIS

23989, *9 (E.D. Pa. Nov. 29, 2004) (citing *In re Hamilton Bancorp. Inc. Securities Litigation*,

No. 01-CIV-0156, 2002 WL 463314, at *1 (S.D. Fla. Jan. 14, 2002) (noting that "bifurcation of

discovery may well-increase litigation expenses by protracting the completion of discovery,

coupled with endless disputes over what is 'merit' versus 'class' discovery"); see also *Nock v.

PalmCo Admin., LLC*, No. 24-CV-00662-RDB, 2025 WL 100894, at *3 (D. Md. Jan. 15, 2025).

("Because individual and class discovery overlaps, the difficulty of drawing the line between the

two is likely to cause further discovery disputes and place greater demands on the Court's time.

This result also implicates the third factor, judicial economy, and weighs against bifurcation.").

As another Court in Texas held recently while rejecting a substantially similar bifurcation

request from a TCPA defendant highlighting the signification overlap between merits and class

certification discovery in a TCPA case while providing an overview of relevant case law:

> As to class certification under Rule 23, the Supreme Court has instructed that "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).

> And "[f]requently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim" because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 351 (cleaned up).

> Considering *Dukes* and the "rigorous analysis" requirement for class certification, district courts have been reluctant to bifurcate class-related discovery from discovery on the merits. *See Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. EDCV152057FMOSPX, 2018 U.S. Dist. LEXIS 2286, 2018 WL 501413 (C.D. Cal. Jan. 5, 2018) (declining to bifurcate discovery in TCPA case and stating that

13

"the distinction between class certification and merits discovery is murky at best and impossible to determine at worst"); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012) (collecting cases).

In another TCPA case, *Cardenas v. Resort Sales by Spinnaker, Inc.*, No. 9:20-cv-00376-RMG, 2021 U.S. Dist. LEXIS 34923, 2021 WL 733393 (D.S.C. Feb. 24, 2021), the Court found that bifurcation would not serve the interests of judicial economy given the plaintiff's "persuasive argument that the evidence needed to determine whether [they] have a claim substantially overlaps with [their] ability to represent a class under [Rule] 23." *Cardenas*, 2021 U.S. Dist. LEXIS 34923, 2021 WL 733393, at *3.

Similarly, here, the undersigned already found that Folsom "may not avoid appropriate classwide discovery that is - as Bond persuasively argues - necessary for a future class certification motion." Dkt. No. 28. And, so, the Court agrees with Bond that bifurcation would not promote efficiency because there is considerable overlap between discovery relevant to the merits of his individual claims and issues of class certification. *Accord True Health Chiropractic, Inc. v. McKesson Corp.*, 2015 WL 273188, *2-3 (N.D. Cal. 2015) (declining to bifurcate a TCPA class action and noting that individual and class discovery claims typically overlap).

And, in light of the bulk of authority discussing the lack of a "bright line" distinction between merits and class discovery, bifurcation could lead to avoidable, future disputes over whether a particular discovery request relates to the merits or to class certification. *See Quinn v. Specialized Loan Servs., LLC*, 321 F.R.D. 324, 327-28 (N.D. Ill. 2017); *see also City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc.*, 2015 U.S. Dist. LEXIS 79392, 2015 WL 11120408, *1-2 (W.D. Ark. 2015) (bifurcation may force the court to resolve "endless discovery disputes"); *True* Health, 2015 U.S. Dist. LEXIS 7015, 2015 WL 273188, at *3 (finding that bifurcation "raise[s] a slew of issues as to what discovery relates to the class, as opposed to the named plaintiffs, thereby causing additional litigation regarding the distinction between the two.").

And, so, considering the binding law from *Dukes* and persuasive authority from other district courts, the Court declines to bifurcate discovery in this case.

*Bond v. Folsom Ins. Agency LLC*, No. 3:24-CV-2551-L-BN, 2025 WL 863469, at *2-3 (N.D.

Tex. Mar. 19, 2025). This Court should hold the same.

**3.     This case is distinct from *Harris* and its progeny because it involves systemic practices, not individualized issues.**

Defendant's reliance on *Harris v. Shore Funding Sols. Inc.* is misplaced. In *Harris*, the

dispute could be decided on a "narrow, potentially dispositive issue", emphasis on narrow, as the

issue there was an individual one of *consent*: whether the plaintiff was associated with the business that the defendant was attempting to contact, and where Defendant's counsel candidly stated that this was the "first TCPA case where his client had no such record [of contacting Plaintiff]." *Harris v. Shore Funding Sols. Inc.*, No. 23CV00789JMAJMW, 2023 WL 3440077, at *3-*4 (E.D.N.Y. Apr. 21, 2023). In making that determination, Judge Wicks noted that these particular and individualized issues, with specific and narrow respect to the plaintiff focusing on whether plaintiff actually received calls or consented, warranted bifurcation.

Here, by contrast, Defendant seems to insinuate and assert, without evidence, that it had nothing to do with the calls at issue, a contention this Court has already rejected at the pleadings stage and argues that this is an individualized issue warranting bifurcation. Far from the individualized consent issues in *Harris*, here, any class issues of liability substantially overlap with the individualizes issues: they are the same issues, and would not involve the types of individualized discovery that the Court identified in *Harris*, including the "Plaintiff's cellphone records, Defendant's call records for April 19, 2022, and other categories that do not specifically relate to the larger proposed class of individuals who received calls within the four years predating the complaint." *Id.* By contrast, the information here, the ownership of the numbers at issue, the relationship between "Tiffany," "Chris," and "DeAndre," whether the Defendant spoofed numbers and used fictitious names, and whether Defendant utilized the email addresses at issue, are all information that will relate as equally to the proposed class of individuals who received calls from Prime as the Plaintiff.

The other TCPA cases that Defendant drops in a footnote all similarly dealt with the issue of consent. For example, in *Pavelka v. Paul Moss Ins. Agency, LLC*, "Paul Moss Insurance received the transfer of an initial call from another entity, Datalot, with Plaintiff Kaylee Pavelka

15

on the line, based on the direction or consent of Kaylee Pavelka." No. 1:22 CV 02226, 2023 WL 3728199, at *1 (N.D. Ohio May 30, 2023). In *Akselrod v. MarketPro Homebuyers LLC*, the Court bifurcated partially because of a pending Supreme Court dispute as to the capabilities of the equipment at issue, as well as whether the communications were "telephone solicitations" under the TPCA with respect to the calls that the plaintiff received. No. CV CCB-20-2966, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021). Similarly, in *Leschinsky v. Inter-Cont'l Hotels Corp.*, there were individualized questions of whether the plaintiff received more than one call as required by the statute, as well as whether the plaintiff was individually called using an "ordinary desktop telephone." No. 8:15-CV-1470-T-30MAP, 2015 WL 6150888, at *1 (M.D. Fla. Oct. 15, 2015). Finally, in *Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, bifurcation focused on the esoteric issue of "whether the faxes sent were informational or whether their apparent informational content was a sham and the faxes were in reality advertisements." No. CIV.A. 12-2132 FLW, 2014 WL 413534, at *5 (D.N.J. Feb. 4, 2014).

And, as Judge Bulsara of this Corut has also observed, discovery costs attendant to class discovery provide little reason to bifurcate discovery. *Jawk Enters., LLC v. Greenlight Energy, Inc.*, No. 19-CV-4212-ARR-SJB, 2019 WL 5881752, at *1 (E.D.N.Y. Nov. 5, 2019). And, as the Court further noted in *Jawk*, and apropos of the point above, if discovery was bifurcated, "Plaintiffs may be permitted to file an amended complaint to cure any identified defect and substitute other plaintiffs," and as such, "there is no reason to think that this case would likely end." *Id.* at *3. Such reasoning applies with equal force to the direct liability claim. Even if the Plaintiff's direct liability claim were defeated at summary judgment, there is no reason to think that this case would likely end unless discovery failed to adduce any evidence of vicarious liability, as well. Of course, the surest way to ensure discovery fails to adduce evidence of

vicarious liability is to prevent discovery into third parties at the outset.  On the other hand, if there were "no bifurcation and full discovery were completed," it could be that Defendant could establish that no viable theory of TCPA liability, either direct or vicarious, existed, and granting leave to amend would be futile. *Id.*

At bottom, these circumstances, unlike those in *Harris*, and the other authorities cited by Defendant, counsel against bifurcation. In *Harris*, there was a pure individualized issue of consent and an admission of no calling records. But here, additional factors, and the uniformity of the individual and class proofs with respect to direct or vicarious liability, counsel against bifurcation here. Indeed, in *Harris*, unlike here, the Defendant relied upon *actual evidence of consent*; here, the Defendant *admits* it has no consent. Plaintiff's claims, and Defendant's defenses, arise from systemic conduct that was uniform across an entire class of individuals who were all harmed in the same way and by the same party or parties. The core class issue is who placed the calls at issue and whether Prime is directly or vicariously liable for that conduct, not individualized issues of whether each individual consented or not, as in other TCPA cases.

Because this case focuses on company-wide practices and issues bearing on the entire class, bifurcation would prevent necessary discovery into those practices and would frustrate Plaintiff's ability to prove both his individual claim and the class claims. The Defendant's proposal to bifurcate discovery into two distinct phases is the opposite of judicial economy because this case provides far more disputed issues than the clear-cut consent issues in *Harris*. In cases such as here, with such significant overlap between individual and class issues, bifurcation serves only to multiply discovery disputes, delay resolution, and impose unnecessary costs on the parties and the Court.

## CONCLUSION

The Court should therefore deny the Defendant's motion to bifurcate.

Dated: August 26, 2025

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CERTIFICATE OF WORD COUNT

In accordance with Judge Wicks' Policies and Procedures, this Memorandum does not exceed 6,500 words.

Dated: August 26, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties who have appeared by operation of the court's electronic filing system.

Dated: August 26, 2025

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.