FILED
CLERK
9/9/2025
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MATTHEW VANDERSLOOT, *individually and
on behalf of all others similarly situated*,

                Plaintiff,

        -against-

CHARLES BARATTA LLC, *doing business as*
PRIME MARKETING,

                Defendant.
-------------------------------------------------------------X

**ORDER**
24-cv-07096 (JMW)

**A P P E A R A N C E S:**

    Andrew Roman Perrong
    **Perrong Law LLC**
    2657 Mt. Carmel Ave
    Glenside, PA 19038
    *Attorney for Plaintiff*

    Laura Kogan
    David Krueger
    **Benesch Friedlander Coplan & Aronoff**
    127 Public Square, Suite 4900
    Cleveland, OH 44114
    *Attorneys for Defendant*

**WICKS**, Magistrate Judge:

Matthew VanderSloot ("Plaintiff") commenced this action on October 8, 2024, pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, asserting that Charles Baratta d/b/a Prime Marketing Source ("Defendant" or "Prime") allegedly called Plaintiff's residential phone number repeatedly despite Plaintiff's registration on the National Do Not Call Registry. (*See generally* ECF Nos. 1, 28.) Plaintiff contends that through use of fictitiously named individuals who allegedly worked for various non-existent companies and entities, Defendant initiated calls to Plaintiff over one hundred times without Plaintiff's consent

1

in an attempt to solicit Plaintiff filing a potential Camp Lejeune claim. (*See* ECF No. 28 at ¶¶ 22-23.) The parties are before the Court on Defendant's motion to bifurcate individual and class discovery effectively seeking to limit the initial discovery to whether or not Defendant placed the subject calls. (*See generally* ECF Nos. 40, 41.) For the reasons that follow, Defendant's motion (ECF No. 40) is **GRANTED**.

## FACTUAL BACKGROUND

Plaintiff commenced this lawsuit asserting a violation of the TCPA on behalf of himself and the National Do-Not-Call ("DNC") Class. (*Id.* at ¶ 3.) Despite having registered his phone number on the National Do Not Call Registry, Plaintiff contends that "Defendant, or its affiliates, agents, or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls or text messages to Plaintiff . . . ." (*Id.* at ¶¶ 17, 64.) According to Plaintiff, Defendant's entire business model is structured around relying on "illegal telemarketing, including using fictitious names to hide their identify" to generate "leads" from potential individuals interesting in filing lawsuits, and subsequently selling that information to law firms. (*See id.* at ¶¶ 19-21.)

Beginning on August 30, 2023, Plaintiff maintains that he received "over approximately one hundred calls" from supposedly fictitious individuals named "Tiffany," "DeAndre," and "Christopher," working for allegedly non-existent companies, including "Legal Helpers" and "Medical Health Department," seeking to solicit Plaintiff for legal representation in a Camp Lejeune claim. (*Id.* at ¶ 22.) Plaintiff avers that these calls were unwanted, nonconsensual, and resulted in violations of Plaintiff's and the DNC Class's privacy rights. (*See id.* at ¶¶ 49-53.)

Notably, Plaintiff maintains that all calls from these entities and individuals were placed "directly by Defendant."[1] (*Id.* at ¶ 23; *see also id.* at ¶ 25 (arguing that Legal Helpers is Defendant)).

On September 20, 2023, and September 27, 2023, Defendant allegedly sent a text message from the (210) 405-8263 telephone number, a number that Plaintiff maintains "is a direct telephone number owned and operated by the Defendant in the Defendant's name," to Plaintiff identifying itself as "DeAndre" with "Legal Helpers." (*Id.* at ¶¶ 28-29.) The calls continued and on January 10, 2024, Plaintiff allegedly received "at least seven calls" from "Tiffany" from the "Medical Health Department" using a (713) 405-3514 number. (*Id.* at ¶ 31.) During the last of the calls, "Tiffany" allegedly asked Plaintiff if he received calls from "[Tiffany's] law associate" from a (954) 800-2991 number, and that Plaintiff should "just search for that number." (*Id.* at ¶ 32.) Plaintiff called this number and spoke with "Christopher Garcia" who provided "cgarcia@primemarketingsource.com" as his email address and a callback number of (954) 799-8058. (*Id.* at ¶ 33.) "Christopher Garcia" followed this call with an email regarding a Camp Lejeune claim which "also originated from the Defendant's email." (*Id.*) As Plaintiff contends, the two "954" numbers "are direct telephone numbers owned and operated by the Defendant in the Defendant's name." (*Id.* at ¶ 34.)

Following this call with "Christopher," Plaintiff received a text message on January 10, 2024 from the 210-405-8263 number that read "954-799-8058 Chris G calls only" and another message saying "*cgarcia@primemarketingsource.com*." (*Id.* at ¶¶ 36-37.) "Christopher" purportedly then sent Plaintiff a text message from the "210" number including a link to a website to upload Plaintiff's ID that, upon clicking the link, prompted an individual named

---

[1] Plaintiff alleges that each these "spoofed" calls, in addition to text messages sent by "DeAndre" and "Tiffany," were sent by various, supposedly fictitious numbers, including: (208) 900-6666, (208) 681-7762, (615) 653-4187, (210) 405-8263, (872) 760-0218, (872) 760-0759, (713) 357-5174. (ECF No. 28 at ¶¶ 26-27.)

3

"Matthew" to upload his ID. (*See id.* at ¶ 38.) Shortly thereafter, on January 17, 2024, Plaintiff received a call from "Christopher" using the same "210" number. (*Id.* at ¶ 39.) As Plaintiff avers, "Tiffany" followed this call with a text asking Plaintiff to fill out verification and registration forms "Christopher" provided to Plaintiff using the 210-405-8263 number. (*See id.*) The next day, Plaintiff received another message from the 210-405-8263 number stating it was "Christopher Gee from Legal Helpers" inquiring about a Camp Lejeune claim. (*Id.* at ¶ 40.) That message left a callback number as 954-799-8058, the same number Christopher mentioned on a prior call. (*See id.* at ¶¶ 40-41.) Under these circumstances, Plaintiff contends that "'Tiffany' from 'Medical Health Department' and 'Chris' and 'DeAndre' calls from 'Legal Helpers' were in fact uncovered as originating from the Defendant . . . ." (*See id.* at ¶¶ 46-48.)

## PROCEDURAL BACKGROUND

Plaintiff filed its Amended Complaint on February 13, 2025. (ECF No. 28.) On April 3, 2025, the undersigned held a pre-motion conference on Defendant's anticipated motion to dismiss the Amended Complaint for failure to state a claim. (*See* ECF No. 31.) During this pre-motion conference, "Plaintiff stipulated on the record that on the current Amended Complaint *only claims of direct liability* under the Telephone Consumer Protection Act are sought and that it *does not encompass a claim of vicarious liability*." (*Id.*) (emphasis added).

On July 9, 2025, the Court denied Defendant's motion to dismiss the Amended Complaint for failure to state a claim under the TCPA, finding that "[b]ecause Plaintiff present[ed] sufficient allegations that raise[d] a plausible inference that Defendant initiated the calls and messages to Plaintiff, Plaintiff's direct liability claim ought to proceed to discovery." *Vandersloot v. Charles Baratta LLC*, No. 24-cv-07096 (JMW), 2025 WL 1898929, at *9 (E.D.N.Y. July 9, 2025). Consequently, the undersigned directed the parties to submit a proposed

4

scheduling order addressing the end date for fact discovery; dates for expert reports and disclosures in chief and rebuttal; and end date of expert discovery. *See id.*

On July 23, 2025, the parties submitted two competing discovery schedules. (*See* ECF No. 39.) In this submission, Defendant expressed its intention to "seek bifurcation on the issue of whether Defendant placed the at issue calls, which the Plaintiff opposes." (*Id.* at p. 1.) Accordingly, the Court directed the parties to submit briefing on the motion to bifurcate discovery. (*See* Electronic Orders dated July 24, 2025, August 13, 2025.) Defendant submitted its motion on August 4, 2025 (ECF Nos. 40-41), Plaintiff opposed on August 26, 2025 (ECF No. 45), and Defendant submitted its reply on September 3, 2025. (ECF No. 46.)

## **THE LEGAL FRAMEWORK**

Bifurcation "is properly understood as a stay of class discovery pending resolution of plaintiff's individual claim." *Chow v. SentosaCare, LLC*, No. 19-CV-2541 (FR), 2020 WL 559704, at *1 (E.D.N.Y. Jan. 23, 2020). A district court has "considerable discretion to stay discovery" under Federal Rule of Procedure 26(c), with the moving party having the burden of establishing good cause. *See Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of N.Y.*, No. 18-CV-4476 (LJL) (SLC), 2020 WL 1166047, at *5 (S.D.N.Y. Mar. 11, 2020); *Mohammed Thani A.T. Al Thani v. Hanke*, 20-CV-4765 (JPC), 2021 WL 23312, at *1 (S.D.N.Y. Jan. 4, 2021) ("Upon a showing of good cause[,] a district court has considerable discretion to stay discovery pursuant to Rule 26(c)") (alteration in original) (quoting *Rep. of Turk. v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018)). Good cause may exist "where the 'resolution of a single issue may resolve the case and render trial on the other issue[s] unnecessary,'" *Charvat v. Plymouth Rock Energy, LLC*, No. 15- CV-4106 (JMA) (SIL), 2016 WL 207677, at *2 (E.D.N.Y. June 5, 2013) (quoting *Tabor v. N.Y. City*, No. 11-CV-0195, 2012 WL

5

603561, at *10 (E.D.N.Y. Feb. 23, 2012)), or where "a narrow, potentially dispositive issue," being "totally distinct from class issues," has the potential render Plaintiff's TCPA claim baseless. *Id.* (quoting *Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, No. 12-CV-2132, 2014 WL 413534, at *2 (D.N.J. Feb. 4, 2014)).

The Federal Rules of Civil Procedure do not squarely address the bifurcation of discovery. *See Cunningham v. Big Think Cap. Inc.*, No. 21-CV-02162 (DRH) (JMW), 2021 WL 4407749, at *2 (E.D.N.Y. Sept. 27, 2021); *see also* Alexa Ashworth, et al., *Bifurcation of Discovery*, 10 Fed. Proc., L. Ed. § 26:88 (Mar. 2023) (noting that the court may bifurcate discovery, for example, "in class actions into sections related to the claims of the named plaintiffs and the class claims"). Rather, when confronted with the issue, courts turn to Rule 42(b), which sets forth the standard to be applied when considering consolidation and separation of cases for trial. *Cunningham*, 2021 WL 4407749, at *2 (citing Fed. R. Civ. P. 42(b)). Borrowing from Rule 42, courts contemplate bifurcating discovery "[f]or convenience, to avoid prejudice, or to expedite and economize" the proceedings. Fed. R. Civ. P. 42(b); *see Charvat*, 2016 WL 207677, at *1 ("The standards applicable to motions to bifurcate discovery appear to be the same as those addressed under Fed. R. Civ. P. 42(b).").

However, bifurcation should be considered an exception, not the rule. *Harris v. Shore Funding Solutions Inc.*, No. 23-cv-00789 (JMA) (JMW), 2023 WL 3440077, at *2 (E.D.N.Y. Apr. 21, 2023). Indeed, courts are likely to deny bifurcation "where discovery relating to class issues overlaps substantially with merits discovery" given that, in such circumstances, "bifurcation will result in duplication of efforts and needless line-drawing disputes." *Chavrat*, 2016 WL 207677 at *1 (quoting *Hines v. Overstock.com, Inc.*, No. 09-CV-991, 2010 WL 2775921, at *1 (E.D.N.Y. July 13, 2020)). Moreover, courts will not bifurcate if bifurcation will

6

simply delay class certification or obfuscate the issue of what discovery relates to the class as opposed to the named plaintiff. *Id.* (citing *True Health Chiropractic Inc. v. McKession Corp.*, No. 13-CV-2219 (JST), 2015 WL 273188, at *2–3 (N.D. Cal. Jan. 20, 2015)).

Mindful of these principles, the Court considers the instant application.

## DISCUSSION

Defendant seeks to bifurcate discovery and serve limited discovery upon Plaintiff targeted at whether Defendant placed the calls at issue or not. (ECF No. 41 at pp. 7-8.) Defendant specifically intends to serve upon Plaintiff discovery requests "that cut to the core issues that might decide the case" at this juncture:

- Whether Prime actually called Plaintiff at the (208) XXX-XXXX phone number;
- If so, whether Plaintiff independently owns the (208) XXX-XXXX phone number, for residential use;
- Whether Prime actually called Plaintiff on the following dates: August 30, 2023; September 4, 2023; September 18, 2023, September 20, 2024; September 27, 2023; November 16, 2023; January 10, 2024; January 17, 2024; January 18, 2024; and
- Whether Prime owns the phone numbers identified in the Complaint.

(*Id.* at p. 4.)

In *Harris*, this Court granted a motion to bifurcate discovery under strikingly similar circumstances. 2023 WL 3440077, at *1. There, defendant sought to bifurcate individual and class discovery under the TCPA to explore "the threshold issue of whether Plaintiff received a call from Defendant" at a certain phone number and "whether Plaintiff owns the phone to which the number is assigned." *Id.* at *2. This Court determined that "limiting discovery for a certain period as to whether Defendant in fact even called Plaintiff at that number would be efficient and avoids costly and potentially unnecessary class discovery in this matter." *Id.* at *3. Indeed, the

discovery regarding whether defendant actually called plaintiff was "distinct from class issues" and would not overlap with it because the proposed bifurcated discovery would involve plaintiff's individual phone records, defendant's specific call records for a certain date, defendant's outgoing calls to plaintiff, and "other categories that do not specifically relate to the larger proposed class of individuals . . . ." *Id.* Moreover, "resolution of [the] narrow, potentially dispositive issue ha[d] the potential to render Plaintiff's TCPA claim baseless and may resolve the case" especially in light of the anticipated dispositive motion practice following limited discovery. *Id.* at *4. Further, the Court emphasized that "limited discovery [] has the potential to save the parties from the costs resulting from class action discovery," especially where plaintiff's propounded demands sought four years of documents containing outbound telemarking information by defendant or its vendors. *Id.* Lastly, the case was in its "nascent stages," an initial conference was held, and initial discovery requests were served by plaintiff only. *Id.* at *1, *5.

      Here, much like in *Harris*, the issues regarding Plaintiff's individual claim are distinct from, and do not overlap with, class issues. Through limited discovery, Defendant seeks to "gather telephone logs evidencing the purported calls, confirm Plaintiff's ownership of the (208) XXX-XXXX telephone number, show alleged text messages and/or emails that were exchanged, any relevant phone recordings of the Subject Calls, and verify through carrier data the origin of said call." (ECF No. 41 at p. 9.) Moreover, Plaintiff's Amended Complaint discusses at length calls and messages from "DeAndre," "Tiffany," and "Chris G," from "Legal Helpers" and "Medical Health Department." (*See* ECF No. 28 at pp. 4-8.) These are issues "that do not specifically relate to the class" but rather are particular to Plaintiff and the communications *he* had with Defendant. *See Cameron v. CHW Group, Inc.*, No. 23-cv-00320-HCN-DBP, 2025 WL 2336513, at *3 (D. Utah Aug. 13, 2025) (finding "enough separation between class discovery

8

and individual discovery to warrant bifurcation" including discovery concerning, *inter alia*, whether plaintiff received telephone solicitations within the TCPA by defendant).

Plaintiff's class allegations, on the other hand, make generalized assertions that Defendant knowingly violated the TCPA by "causing multiple telephone solicitation calls and/or text messages to be initiated to Plaintiff and members of the National DNC Class in a 12-month period" despite being registered on the National Do Not Call Registry. (ECF No. 28 at ¶¶ 63-65.) Plaintiff fails to offer anything more than conclusory statements to support its contention that overlap exists. (*See* ECF No. 45 at pp. 12-14.) As such, the proposed limited discovery will not substantially overlap with class discovery or result in duplication of efforts. *Compare Harris*, 2023 WL 3440077, at *4, *with Cunningham*, 2021 WL 4407749, at *3 (determining bifurcation was not appropriate where issues of consent "concern[ed] the same online application and consent agreement" that all class members and plaintiff received).

Moreover, determining whether Defendant initiated the calls to Plaintiff is the dispositive issue on a direct liability claim. *Banks v. Pro Custom Solar*, 416 F. Supp. 3d 171, 173 (E.D.N.Y. 2018) (noting that to establish direct liability under the TCPA, a plaintiff must allege that a defendant initiated the unsolicited call). As noted *supra*, Plaintiff is *solely* pursuing a claim of direct liability. (*See* ECF No. 31.) It follows, therefore, that Plaintiff's direct liability claim may be rendered baseless following a limited discovery period into whether Defendant placed the calls and whether Defendant owns the numbers that called Plaintiff. *Compare Fania v. Kin Ins., Inc.*, No. 22-12354, 2024 WL 2607303, at *2 (E.D. Mich. May 24, 2024) (bifurcating discovery to address the "case-dispositive questions" of whether plaintiff received a pre-recorded call and whether defendant was legally responsible for such calls), *with Simmons v. Author Reputation Press LLC*, No. 24-12330-BEM, 2025 WL 863601, at *2 (D. Mass. Mar. 18, 2025) (denying

9

motion to bifurcate where defendant provided "no specific basis on which to conclude" plaintiff's individual claim was "vulnerable to early defeasance").

Furthermore, limited discovery may save the parties, particularly Defendant, from the "hefty litigation expenses and an extensive use of judicial resources" common in TCPA class actions. *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*, No. 12-2132 (FLW), 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014) ("It is also generally understood that the costs can be particularly 'enormous' for defendants.") (citation omitted). Indeed, a majority of Plaintiff's initial discovery demands are tailored towards a theory of vicarious liability notwithstanding Plaintiff's stipulation to the contrary. For example, Plaintiff's first set of interrogatories seek, *inter alia*, "[a]ll communications with any third party concerning this litigation other than [Defendant's] attorney," "all documents containing . . . information for each outbound telemarketing call sent by [Defendant] or [Defendant's] vendor, including those made to Plaintiff," "[a]ll internal communications at [Defendant's] company regarding any third party that provided you the Plaintiff's telephone number," and "all complaints concerning outbound calls made by [Defendant] or by any vendor of [Defendant's] for allowing or making allegedly unlawful or unauthorized outbound calls." (ECF No. 45-2 at pp. 19, 28, 31, 33.) This discovery stretches not only beyond the theory of direct liability, but seeks *any* and *all* information from these third parties, thereby increasing potential costs and expenses. *Compare Harris*, 2023 WL 3440077, at *4, *with Charvat*, 2016 WL 207677, at *2 (denying motion to bifurcate where defendant submitted no information suggesting that the discovery requests would be voluminous, unduly burdensome to produce, or disproportionate to the needs of the case).

This case is also in its nascent stages. Although a scheduling order was entered on January 6, 2025 (ECF Nos. 22, 23), discovery was stayed shortly thereafter on February 7, 2025

pending disposition of Defendant's motion to dismiss. Even following denial of the motion to dismiss on July 9, 2025, no discovery schedule was entered because of the current motion to bifurcate. (*See* ECF No. 39); *see Harris*, 2023 WL 3440077, at *1 ("The case is in its infancy. At the initial conference, the Court entered a Scheduling Order and set a briefing schedule for Defendant's motion to bifurcate discovery as to Plaintiff's individual claim and the proposed class."). Though Plaintiff raises prejudice in the form of being deprived of information needed to develop his current *and alternative theories* of his case, any asserted prejudice is neutralized by the early stage of this case coupled with the burdens and costs associated with unnecessary class action discovery under the TCPA. *See Harris*, 2023 WL 344077, at *5; *see also Pavelka v. Paul Moss Ins. Agency, LLC*, No. 1:22 CV 02226, 2023 WL 3728199, at *2 (N.D. Ohio May 30, 2023) (granting bifurcation where the case "[was] still in its preliminary stages" before defendant suggested bifurcating discovery); *see also Newell v. Aliera Healthcare, Inc.*, No. 19-cv-01489-SCJ, 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020).

      Under the circumstances presented, where limited discovery (i) does not substantially overlap with class discovery, (ii) would ensure the just, speedy, and inexpensive determination of this action, and (iii) would not prejudice Plaintiff based on the status of this litigation, Defendant has established good cause for limited discovery related to Plaintiff's individual claim of direct liability. Accordingly, bifurcation of discovery is warranted and appropriate here.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for bifurcation (ECF No. 40) is **GRANTED**. All discovery relevant to Plaintiff's individual direct liability claim under the TCPA shall conclude by **November 7, 2025**, and the parties are directed to file a joint status report, on or before **November 3, 2025**, advising the Court as to the progress of discovery. Class discovery is stayed until further order by the Court.

Dated: Central Islip, New York
       September 9, 2025

S O   O R D E R E D:
/s/ *James M. Wicks*
    JAMES M. WICKS
United States Magistrate Judge